# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,

        Plaintiff,

    v.

MARSH USA INC.,

        Defendant.

Case No. 1:23-cv-13017-ADB

## DEFENDANT MARSH USA INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS

Jonathan I. Handler, BBO # 561475
Candace J. Hensley, BBO # 706150
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
Telephone: (617) 345-4600
Facsimile: (617) 345-4745
jihandler@daypitney.com
chensley@daypitney.com

## <u>TABLE OF CONTENTS</u>

I.      Preliminary Statement ................................................................................................1

II.     Background ..................................................................................................................3

     A.    The Broker Agreement Between Marsh and Harvard ....................................3

     B.    Harvard's E&O Insurance Program ...............................................................4

     C.    The SFFA Action ...........................................................................................5

     D.    Harvard Files Suit Against Zurich .................................................................7

     E.    Harvard and Marsh Execute a Tolling Agreement ........................................7

     F.    Harvard Files Instant Action Against Marsh .................................................8

III.    Legal Standard .............................................................................................................8

IV.     Legal Argument ...........................................................................................................9

     A.    Counts I and II of Harvard's Complaint Accrued No Later Than
          January 30, 2016 .............................................................................................9

     B.    Counts I and II of Harvard's Complaint Are Time-Barred .........................11

     C.    Alternatively, This Court Should Dismiss Count II as
          Inappropriate, Unnecessary, and Duplicative of Count I.............................13

V.      Conclusion .................................................................................................................14

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Aeolus Down, Inc. v. Credit Suisse Int'l*,
No. 10-CV-8293 (LLS), 2011 WL 5570062 (S.D.N.Y. Nov. 16, 2011) .....................13

*A.G. ex rel. Maddox v. Elsevier, Inc.*,
732 F.3d 77 (1st Cir. 2013) ...........................................................................................9

*Arcieri v. N.Y. Life Ins. Co.*,
63 F.Supp.3d 159 (D. Mass. 2014) ................................................................................9

*Babeu v. Apple, Inc.*,
No. 21-CV-11967-AK, 2022 WL 3586078 (D. Mass. Aug. 22, 2022) ..........................9

*Beram v. Ceaco, Inc.*,
219 F.Supp.3d 274 (D. Mass. 2016) .........................................................................9, 10

*Crimson Galeria Ltd. P'ship v. Healthy Pharms., Inc.*,
337 F.Supp.3d 20 (D. Mass. 2018) ...........................................................................3, 8

*Gandhi v. Nayak*,
539 N.Y.S.2d 335 (N.Y. App. Div. 1989) ..................................................................10

*In re GlassHouse Techs., Inc.*,
604 B.R. 600 (Bankr. D. Mass. 2019),
*aff'd*, 654 B.R. 190 (D. Mass. 2023)............................................................................10

*Intell. Cap. Partner v. Institutional Credit Partners LLC*,
No. 08-CV-10580 (DC), 2009 WL 1974392 (S.D.N.Y. July 8, 2009).........................13

*J.C. Penney Corp., Inc. v. Carousal Ctr. Co., L.P.*,
635 F.Supp.2d 126 (N.D.N.Y. 2008)...........................................................................10

*Kermanshah v. Kermanshah*,
580 F.Supp.2d 247 (S.D.N.Y. 2008)............................................................................10

*Martorana v. Progressive Direct Ins. Co.*,
No. 22-cv-10613-DJC, 2023 WL 2465639 (D. Mass. Mar. 10, 2023)........................13

*McLaughlin v. Snowlift, Inc.*,
185 N.Y.S.3d 212 (N.Y. App. Div. 2023) ..................................................................12

*Morson v. Kreindler & Kreindler, LLP*,
814 F.Supp.2d 220 (E.D.N.Y. 2011) ...........................................................................11

*Murphy v. Harris*,
    177 N.Y.S.3d 559 (N.Y. App. Div. 2022) ............................................................11, 12

*Nat'l Life Ins. Co. v. Frank B. Hall & Co. of N.Y., Inc.*,
    494 N.E.2d 449 (N.Y. 1986)........................................................................................11

*Nuance Commc'ns., Inc. v. Int'l Bus. Machs. Corp.*,
    544 F.Supp.3d 353 (S.D.N.Y. 2021),
    *aff'd*, No. 21-1758-cv, 2022 WL 17747782 (2d Cir. Dec. 19, 2022) ..........................10

*Personal Watercraft Product SARL v. Robinson*,
    No. 16-cv-9771 (AJN), 2017 WL 4329790 (S.D.N.Y. Sept. 1, 2017) .........................13

*President and Fellows of Harvard College v. Zurich Am. Ins. Co.*,
    77 F.4th 33 (1st Cir. 2023)..............................................................................................7

*President and Fellows of Harvard College v. Zurich Am. Ins. Co.*,
    No. 21-cv-11530-ADB, 2022 WL 16639238 (D. Mass. Nov. 2, 2022) .........................7

*Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*,
    524 F.3d 315 (1st Cir. 2008)............................................................................................9

**Rules**

Fed. R. Civ. P. 12.................................................................................................................1, 8

N.Y. C.P.L.R. § 213.............................................................................................................10

## I.      PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Marsh USA Inc.,[1] submits this Memorandum of Law in support of its motion to dismiss Counts I and II of the Complaint filed by Plaintiff President and Fellows of Harvard College ("Harvard").  Applying basic math to Harvard's own allegations, it is apparent that Harvard commenced this lawsuit after the expiration of the limitations period applicable to its claims for breach of contract and declaratory judgment.  As a result, the claims are time-barred, and this Court should dismiss Counts I and II of Harvard's Complaint with prejudice.

This is an insurance broker malpractice dispute.  Marsh served as Harvard's insurance broker during the relevant time period pursuant to a broker agreement executed between the parties.  In Count I of the Complaint, Harvard asserts a breach of contract claim against Marsh arising out of that broker agreement.  Specifically, Harvard alleges that Marsh breached the agreement by failing to timely notify Zurich American Insurance Company ("Zurich"), one of Harvard's excess insurance carriers, of a lawsuit filed against Harvard.  Zurich subsequently denied coverage of the claims asserted in that lawsuit.  Zurich did so on the basis that Harvard failed to properly notify Zurich of those claims in accordance with the notice provision in the Zurich insurance policy requiring an insured to submit notice to Zurich of any claims no later than 90 days after the end of the policy period (*i.e.*, on or before January 30, 2016).  In Count II of the Complaint, Harvard seeks declaratory relief from this Court regarding Marsh's alleged breach of the broker agreement and its alleged liability to Harvard as a result.

---

[1] Marsh USA Inc. is now known as "Marsh USA LLC."  Marsh USA Inc. and Marsh USA LLC will be referred to collectively herein as "Marsh."

Because Harvard's Count I (Breach of Contract) and Count II (Declaratory Judgment – Breach of Contract) assert claims against Marsh based upon the parties' broker agreement, those claims are governed by New York law and New York statutes of limitations under the agreement's choice of law provision.  New York applies a six-year statute of limitations to breach of contract claims and to related claims for declaratory judgment.  Under New York law, such claims accrue at the time of the alleged breach.  Here, because Harvard alleges that Marsh breached the broker agreement by failing to provide Zurich with timely notice of the lawsuit no later than 90 days after the end of the Zurich policy period (*i.e.*, on or before January 30, 2016), Counts I and II accrued no later than January 30, 2016.  Applying the six-year limitations period, and accounting for the 228 day suspension of that period for COVID-19, Harvard had to file suit by September 15, 2022 for its claims to be timely.  But Harvard did not file this action until October 25, 2023 – over a year *after* these claims became time-barred.  Accordingly, this Court should grant this motion and dismiss Counts I and II of Harvard's Complaint with prejudice.

Alternatively, this Court should dismiss Count II of Harvard's Complaint with prejudice because claims for declaratory judgment are unnecessary and duplicative where, as here, the plaintiff has an alternative remedy in another form of action, such as a breach of contract.  Because Count II is unnecessary and duplicative of Count I, this Court should dismiss Count II with prejudice.

## II.      BACKGROUND[2]

### A.      The Broker Agreement Between Marsh and Harvard

Marsh and Harvard entered into a series of written broker agreements, including an agreement effective for the period of July 1, 2014 through June 30, 2015 (the "Broker Agreement").[3]  Pursuant to the terms of the Broker Agreement, Marsh agreed to act as Harvard's insurance broker and risk management consultant for several lines of insurance coverage, including an errors and omissions ("E&O") insurance program placed by Marsh on Harvard's behalf.[4]  As Harvard's insurance broker, Marsh agreed to provide Harvard with certain "Claims-Related Services," including to "prepare loss notices to insurers and notify insurers of claims; provided that your Marsh claims advocate is informed in writing by you of the claim, with details of the claim, and Marsh has placed the applicable policies or the Marsh claims advocate has been provided written notice by you of the applicable carrier and policies."[5]  The Broker Agreement contains a New York choice of law clause.[6]

---

[2] Marsh disputes the Complaint's allegations and further disputes that Harvard is entitled to any relief from Marsh in this litigation, but solely for the purposes of this Motion and pursuant to the standard of review applicable to motions to dismiss, Marsh "accept[s] as true all well-pleaded facts, analyzes those facts in the light most hospitable to [Harvard's] theory, and draw[s] all reasonable inferences from those facts in favor of [Harvard]."  *See Crimson Galeria Ltd. P'ship v. Healthy Pharms., Inc.*, 337 F.Supp.3d 20, 29 (D. Mass. 2018).

[3] *See* Complaint ("Compl."), ¶ 20.  A copy of the Complaint and corresponding Exhibits are filed herewith at Exhibit 1.  A copy of the Broker Agreement is attached to Harvard's Complaint at Exhibit A.

[4] *See* Compl., ¶¶ 21, 23; *id.* at Ex. A, § 1.

[5] *See* Compl., ¶¶ 22, 24–25; *id.* at Ex. A, § 1(p).

[6] Compl., Ex. A, § 9 ("The laws of the State of New York govern this Agreement.").

### B.    Harvard's E&O Insurance Program

Pursuant to the Broker Agreement, Marsh renewed Harvard's E&O program for the 2014-2015 policy year, including (1) $25 million in primary coverage via a policy issued by National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("AIG"), which sat above a $2.5 million self-insured retention ("SIR"), and (2) a first-layer excess policy issued by Zurich American Insurance Company ("Zurich") providing $15 million in coverage excess of AIG's policy limits.[7]

The AIG and Zurich policies provided claims-made coverage for the policy period effective from November 1, 2014 to November 1, 2015.[8]  The AIG policy's notice provision provides that "[t]he Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured . . . [and further] that in all events, all Claims . . . must be reported to the Insurer no later than ninety (90) days after the end of the Policy Period[.]"[9]  The Zurich policy "follows form" to the AIG policy and, with respect to notice, provides: "As a condition precedent to exercising any rights under this policy, the Policyholder shall give the Underwriter written notice of any claim or any potential claim under this policy or any Underlying Insurance in the same manner required by the terms and conditions of the Followed Policy."[10]  The Zurich policy goes on to provide: "[N]otice to the insurer(s) of the Followed Policy or other Underlying Insurance does not constitute notice to the Underwriter. Written notice of any claim or potential claim shall be provided to the Underwriter at the address

---

[7] *See* Compl., ¶ 5.  The AIG policy is attached to Harvard's Complaint at Exhibit B, and the Zurich policy is attached to Harvard's Complaint at Exhibit C.

[8] *See* Compl., ¶¶ 27, 30; *id.* at Ex. B, 1; *id.* at Ex. C, Form U-FLXS-D-100-A-CW.

[9] Compl., ¶ 29; *id.* at Ex. B, 58.

[10] Compl., ¶ 34; *id.* at Ex. C, Form U-FLXS-100-A CW, ¶ III.A.

set forth in Item 5.A. of the Declarations."[11]   The Zurich policy identifies the AIG policy as the "Underlying Insurance" and the "Followed Policy."[12]

> ## C.      The SFFA Action

On November 17, 2014, Students for Fair Admissions, Inc. ("SFFA") filed a lawsuit against Harvard in the United States District Court for the District of Massachusetts (the "SFFA Action").[13]   SFFA's complaint alleged that Harvard College administered its student admissions plan and process in violation of Title VI.[14]

On or about November 18, 2014, Harvard sent Marsh an email regarding the SFFA Action and requested that Marsh report the matter to AIG.[15]   Marsh did so, and AIG accepted coverage of the SFFA Action under the AIG policy.[16]   Over the following months, Harvard and Marsh exchanged numerous emails regarding the SFFA Action.[17]   In the course of these exchanges, which took place as the claim progressed, Harvard now alleges that Marsh received new information indicating that the SFFA Action would be expensive and long-lasting; thus, Marsh allegedly knew or should have known that it was possible for the claim to fully exhaust AIG's primary layer of coverage and reach into Zurich's excess layer.[18]   As a result, Harvard claims, Marsh should have

---

[11] Compl., ¶ 34; *id.* at Ex. C, Form U-FLXS-100-A CW, ¶ III.A.

[12] Compl., ¶ 35; *id.* at Ex. C, Form U-FLXS-D-100-A-CW, Item 3.

[13] Compl., ¶ 37.

[14] *Id.* at ¶ 38.

[15] *Id.* at ¶¶ 48–49.

[16] *See id.* at ¶ 51.

[17] *See id.* at ¶ 54.

[18] *See id.* at ¶ 56.

reported the SFFA Action to Zurich pursuant to its contractual obligations owed to Harvard under the parties' Broker Agreement.[19]

Harvard alleges that in May 2017, it reached out to Marsh to inquire whether an update on the SFFA Action should be provided to Zurich.[20]  Harvard claims that in response to Harvard's inquiry, Marsh notified Harvard that it had not yet reported the SFFA Action to Zurich.[21]  Harvard further alleges that, upon learning this information purportedly for the first time, it demanded that Marsh formally report the SFFA Action to Zurich, which Marsh did by letter dated May 23, 2017.[22]

On October 25, 2017, Zurich denied coverage of the SFFA Action under the Zurich policy on the grounds that Harvard failed to provide timely notice of the SFFA Action according to the terms and conditions of the Zurich policy.[23]  Specifically, Zurich asserted that the notice provision of the Zurich policy required Harvard, as a condition precedent to coverage, to report all claims to Zurich no later than 90 days after the end of the policy period (*i.e.*, no later than January 30, 2016).[24]  Zurich asserted that because it did not receive notice of the SFFA Action until May 2017, Harvard failed to provide timely notice of the SFFA Action under the Zurich policy and therefore denied coverage.[25]

---

[19] Compl., ¶¶ 6, 8, 56.

[20] *Id.* at ¶ 57.

[21] *Id.* at ¶ 58.

[22] *Id.* at ¶¶ 58–59.

[23] *Id.* at ¶¶ 10, 63–64.  A copy of Zurich's denial letter is attached to the Complaint at Exhibit E.

[24] *See* Compl., Ex. E, 2.

[25] *Id.*

### D.      Harvard Files Suit Against Zurich

In September 2021, Harvard filed suit against Zurich in the United States District Court for the District of Massachusetts seeking coverage for the SFFA Action under the Zurich policy along with a declaratory judgment ruling that Zurich's late notice defense was invalid.[26]  On November 2, 2022, the District Court (Burroughs, J.) granted summary judgment in favor of Zurich based on Zurich's late notice defense.[27]  Harvard appealed the District Court's summary judgment ruling to the U.S. Court of Appeals for the First Circuit, but that Court affirmed the District Court's ruling.[28]

### E.      Harvard and Marsh Execute a Tolling Agreement

On May 1, 2023, Marsh and Harvard entered into a Tolling Agreement,[29] effective April 28, 2023, tolling "[a]ny and all applicable limitation periods, including state and federal statutes of limitations," with respect to any potential claims that Harvard may wish to assert against Marsh for "alleged errors, omissions, and negligence in connection with the timing of notification of the SFFA Litigation to Zurich, and services and omissions related to the [Zurich] Excess Policy."[30]  Under a section titled "Non-Admission as to Timing Defenses", the Tolling Agreement provides that "[n]othing in this [Tolling] Agreement shall be taken as an admission by any Party as to the applicability, running, expiration, or non-expiration of any Timing Defenses prior to the Effective

---

[26] Compl., ¶ 66.

[27] Compl., ¶ 67; *see also President and Fellows of Harvard College v. Zurich Am. Ins. Co.*, No. 21-cv-11530-ADB, 2022 WL 16639238 (D. Mass. Nov. 2, 2022).

[28] Compl., ¶¶ 68–69; *see also President and Fellows of Harvard College v. Zurich Am. Ins. Co.*, 77 F.4th 33 (1st Cir. 2023).

[29] A copy of the Tolling Agreement is attached to Harvard's Complaint at Exhibit F.  Prior to executing the Tolling Agreement, Harvard filed a complaint against Marsh in the Superior Court of the Commonwealth of Massachusetts for Suffolk County, but that complaint was voluntarily dismissed by Harvard on the same day that the Tolling Agreement was executed.

[30] *See* Compl., ¶ 77; *id.* at Ex. F, 1–3, 7.

Date [on April 28, 2023]."[31]   Under a section titled "No revival of Potential Claims", the Tolling Agreement further provides that "[n]othing in this [Tolling] Agreement shall have the effect of reviving any Potential Claims that otherwise are barred by any Timing Defenses as of the Effective Date [on April 28, 2023]."[32]   The Tolling Agreement expired on October 25, 2023.[33]

### F.    Harvard Files Instant Action Against Marsh

On or about October 25, 2023, Harvard filed suit against Marsh in the Superior Court of the Commonwealth of Massachusetts for Suffolk County.[34]   Marsh subsequently removed the case to this Court.[35]   In the Complaint, Harvard alleges four separate causes of action against Marsh: (I) Breach of Contract; (II) Declaratory Judgment – Breach of Contract; (III) Broker Malpractice (Tort); and (IV) Declaratory Judgment – Broker Malpractice (Tort).[36]   The contractual claims asserted in Counts I and II are based upon Marsh's alleged breach of the Broker Agreement by purportedly failing to timely report the SFFA Action to Zurich.[37]

## III.    LEGAL STANDARD

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court "must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the Plaintiffs' theory, and draw all reasonable inferences from those facts in favor of the Plaintiffs." *Crimson Galeria*, 337 F.Supp.3d at 29.   However, "[a] mechanistic recital of the elements of a claim will

---

[31] *See* Compl., Ex. F, 5.

[32] *See id.*

[33] Compl., ¶ 78.

[34] *See generally* Compl. (dated October 25, 2023).

[35] *See* Notice of Removal, ECF No. 2.

[36] *See* Compl., ¶¶ 80–110.

[37] *See id.* at ¶¶ 87, 97.

not suffice: the complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A defendant can raise the statute of limitations as an affirmative defense in a Rule 12(b)(6) motion to dismiss so long as the underlying factual basis for the defense is 'clear on the face of the plaintiff's pleading.'" *Arcieri v. N.Y. Life Ins. Co.*, 63 F.Supp.3d 159, 163 (D. Mass. 2014) (quoting *Santana-Castro v. Toledo-Davila*, 579 F.3d 109, 114 (1st Cir. 2009)). "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008). "Exhibits attached to the complaint are properly considered part of the pleading 'for all purposes,' including Rule 12(b)(6)." *Id.* at 321.

## IV.    LEGAL ARGUMENT

### A.    Counts I and II of Harvard's Complaint Accrued No Later Than January 30, 2016

The Broker Agreement contains a New York choice of law provision, which provides: "The laws of the State of New York govern this Agreement."[38]  Under "Massachusetts principles of contract interpretation, choice-of-law provisions such as the one[] at issue here apply to procedural *and* substantive law, thereby requiring the forum court to apply the statutes of limitations of the state named in the choice-of-law-provision" – here, New York.  *See Babeu v. Apple, Inc.*, No. 21-CV-11967-AK, 2022 WL 3586078, at *3 (D. Mass. Aug. 22, 2022) (emphasis in original); *see also Beram v. Ceaco, Inc.*, 219 F.Supp.3d 274, 278–79 (D. Mass. 2016) (applying

---

[38] Compl., Ex. A at § 9.

New York statute of limitations to pleaded contract claims pursuant to New York choice-of-law provision in contract); *In re GlassHouse Techs., Inc.*, 604 B.R. 600, 615–17 (Bankr. D. Mass. 2019) (applying New York law to breach of contract claim asserted against Marsh based upon same contractual choice of law provision at issue here), *aff'd*, 654 B.R. 190 (D. Mass. 2023).

New York has a six year statute of limitations applicable to breach of contract actions like the one at issue in Count I of Harvard's Complaint. *See, e.g.*, N.Y. C.P.L.R. § 213(2); *see also Beram*, 219 F.Supp.3d at 279; *J.C. Penney Corp., Inc. v. Carousal Ctr. Co., L.P.*, 635 F.Supp.2d 126, 131 (N.D.N.Y. 2008). Under New York law, "[i]t is well-established that a claim for breach of contract accrues when the alleged breach occurs." *J.C. Penney*, 635 F.Supp.2d at 134, n. 5.

New York's "statute of limitations period for a declaratory judgment action is based on the underlying substantive claims upon which it is premised." *Kermanshah v. Kermanshah*, 580 F.Supp.2d 247, 268 (S.D.N.Y. 2008). Thus, for declaratory judgment actions that are based upon an alleged breach of contract, a six-year statute of limitations applies. *See, e.g.*, *Nuance Commc'ns., Inc. v. Int'l Bus. Machs. Corp.*, 544 F.Supp.3d 353, 373 at n. 19 (S.D.N.Y. 2021) ("Courts in New York apply the same statute of limitations to declaratory judgment claims that they do to the underlying claim for breach of contract."), *aff'd*, No. 21-1758-cv, 2022 WL 17747782 (2d Cir. Dec. 19, 2022); *Gandhi v. Nayak*, 539 N.Y.S.2d 335, 336 (N.Y. App. Div. 1989) ("Since this is a declaratory judgment action, we find that the six-year Statute of Limitations . . . applicable to the plaintiff's breach of contract claim, which underlies the instant action, controls the time in which this action must be commenced."). As with breach of contract actions, a declaratory judgment action based upon an alleged breach of contract accrues when the defendant first allegedly breached the contract, because that is when the "justiciable controversy began." *See, e.g.*, *J.C. Penney*, 635 F.Supp.2d at 134, n. 5. New York courts explicitly reject the position

that a limitations period does not begin to run until the plaintiff discovers his or her injury arising out of the alleged misconduct, because it is the date on which the alleged breach occurred that matters for the purposes of claim accrual.  *See, e.g.*, *Morson v. Kreindler & Kreindler, LLP*, 814 F.Supp.2d 220, 227–28 (E.D.N.Y. 2011).

Accordingly, the contractual causes of action asserted in Counts I and II of Harvard's Complaint accrued when Marsh first allegedly breached the Broker Agreement.  As to that, Harvard alleges that Marsh breached the Broker Agreement by failing to timely notify Zurich of the SFFA Action pursuant to the terms of the Zurich policy, which required notice to be provided no later than 90 days after the end of the policy (*i.e.*, on or before January 30, 2016).  Therefore, accepting Harvard's well-pleaded allegations as true for the purposes of this Motion, Harvard alleges that Marsh first breached the Broker Agreement *no later than January 30, 2016*, when Marsh allegedly failed to provide timely notice of the SFFA Action to Zurich within the terms of the Zurich policy.  *See Nat'l Life Ins. Co. v. Frank B. Hall & Co. of N.Y., Inc.*, 494 N.E.2d 449, 450 (N.Y. 1986) (breach of contract claim against insurance broker began to run upon broker's alleged "failure to timely notify the [] insurers" of the claim "and not upon the insurers' disclaimer of liability for late notification").

### B.    Counts I and II of Harvard's Complaint Are Time-Barred

Given that the claims in Counts I and II of Harvard's Complaint accrued no later than January 30, 2016, New York's six-year limitations period ordinarily would have expired on January 30, 2022 (*i.e.*, 6 years after January 30, 2016).  However, on March 20, 2020, the New York Governor signed Executive Order No. 202.8 "in response to the public health crisis occasioned by the COVID-19 pandemic."  *See Murphy v. Harris*, 177 N.Y.S.3d 559, 561 (N.Y. App. Div. 2022).  "[T]he Executive Order 'tolled' any 'specific time limit for the commencement,

filing, or service of any legal action . . . until April 19, 2020,'" including statutes of limitations, and the toll was subsequently extended through November 3, 2020. *See id.* (quoting 9 NYCRR § 8.202.8). "[D]ue to the tolling provision of the executive orders, the statute of limitations [for Counts I and II of Harvard's Complaint] was tolled between March 20, 2020, and November 3, 2020, a period of 228 days." *See McLaughlin v. Snowlift, Inc.*, 185 N.Y.S.3d 212, 214 (N.Y. App. Div. 2023). Therefore, the applicable statute of limitations for Counts I and II ran on September 15, 2022 (*i.e.*, 228 days after January 30, 2022, when the limitations period ordinarily would have expired).

While the parties entered into a Tolling Agreement with respect to Harvard's potential claims against Marsh related to its notice to Zurich of the SFFA Action, that Agreement did not become effective until April 28, 2023, *i.e.*, about seven months ***after*** the statute of limitations applicable to Counts I and II expired (on September 15, 2022). The Tolling Agreement explicitly states that it does not "have the effect of reviving any Potential Claims that otherwise are barred by any Timing Defenses as of the Effective Date." Therefore, as of the Tolling Agreement's Effective Date on April 28, 2023, Counts I and II of Harvard's Complaint were already time-barred by the applicable six-year statute of limitations, and the claims remained time-barred after the Tolling Agreement became effective.

In summary, Harvard's contractual claims asserted in Counts I and II of the Complaint accrued no later than January 30, 2016. Pursuant to the six-year statute of limitations applicable to Counts I and II, plus the 228 day COVID-related tolling period applicable to the limitations period, those claims expired no later than September 15, 2022. But Harvard failed to file its Complaint by that date, thereby rendering its contractual claims untimely. As a result, this Court

should grant this motion and dismiss as time-barred Counts I and II of Harvard's Complaint with prejudice.

### C.  Alternatively, This Court Should Dismiss Count II as Inappropriate, Unnecessary, and Duplicative of Count I

In the event that this Court does not dismiss Counts I and II as untimely, Marsh alternatively moves to dismiss Count II as inappropriate, unnecessary, and duplicative of Count I. Under New York law, "[a] cause of action for declaratory judgment is unnecessary and inappropriate" thus warranting dismissal, "when the plaintiff has an alternative remedy in another form of action, such as breach of contract." *See, e.g.*, *Aeolus Down, Inc. v. Credit Suisse Int'l*, No. 10-CV-8293 (LLS), 2011 WL 5570062, at *5 (S.D.N.Y. Nov. 16, 2011) (quoting *Apple Records, Inc. v. Capitol Records, Inc.*, 529 N.Y.S.2d 279, 281 (N.Y. App. Div. 1988)); *see also Intell. Cap. Partner v. Institutional Credit Partners LLC*, No. 08-CV-10580 (DC), 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) (dismissing claim for "declaratory relief [because it] would serve no useful purpose as the legal issues will be resolved by litigation of the breach of contract claim"); *Personal Watercraft Product SARL v. Robinson*, No. 16-cv-9771 (AJN), 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (granting motion to dismiss declaratory judgment action where "such a declaration [was] a necessary antecedent to a finding of liability under the breach-of-contract claim, and the Plaintiff [] made no particularized argument as to why this would not be the case"). Similarly, "[t]he First Circuit [] has stated that '[p]leading an additional cause of action [which] provides . . . no further remedy . . . is . . . subject to dismissal as a duplicative claim." *Martorana v. Progressive Direct Ins. Co.*, No. 22-cv-10613-DJC, 2023 WL 2465639, at *9 (D. Mass. Mar. 10, 2023) (collecting D. Mass. cases dismissing declaratory judgment claim as duplicative and quoting *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 237 (1st Cir. 2013) (applying Massachusetts law)).

-13-

Here, Harvard's claim for declaratory judgment asserted in Count II should be dismissed because the claim is inappropriate, unnecessary, and duplicative of the relief sought in its breach of contract claim asserted in Count I.   Indeed, Harvard bases Counts I and II entirely upon the same allegations – specifically, that Marsh allegedly breached the Broker Agreement and therefore is liable to Harvard for the damages resulting from its alleged breach.   Count II is thus inappropriate and duplicative because the legal issues will be resolved by litigation of Count I, and Harvard seeks no relief in Count II that is not implicitly sought in Count I.   Therefore, the Court should dismiss Count II with prejudice.

## V.      CONCLUSION

For the foregoing reasons, the Court should grant Marsh's partial motion to dismiss and thereby dismiss Counts I and II of Harvard's Complaint with prejudice.   Alternatively, the Court should dismiss Count II of Harvard's Complaint with prejudice.

Dated: January 5, 2024

Respectfully submitted,

**Marsh USA Inc.,**

By its attorneys,

*/s/ Candace J. Hensley*
Jonathan I. Handler, BBO # 561475
Candace J. Hensley, BBO # 706150
DAY PITNEY LLP
One Federal Street, 29th Floor
Boston, MA 02110
Telephone: (617) 345-4600
Facsimile: (617) 345-4745
jihandler@daypitney.com
chensley@daypitney.com

-14-

## <u>CERTIFICATE OF SERVICE</u>

I, Candace J. Hensley, hereby certify that on January 5, 2024, I served a true and correct copy of this, *Defendant Marsh USA Inc.'s Memorandum of Law in Support of Its Partial Motion to Dismiss*, upon Plaintiff's attorney of record via the Court's electronic filing system and in accordance with Fed. R. Civ. P. 5(b).

*/s/ Candace J. Hensley*
Candace J. Hensley

-15-