# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,

                              Plaintiff,

            v.

MARSH USA INC.,

                              Defendant.

Civil Action No.: 1:23-cv-13017-ADB

**PLAINTIFF PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S
MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANT MARSH USA INC.'S PARTIAL MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

<u>Page</u>

I.     INTRODUCTION ........................................................................................1

II.    BACKGROUND ..........................................................................................2

    A.    Marsh Assumed a Duty to Harvard to Ensure That Timely Notice Was Provided to Harvard's Insurers ........................................................2

    B.    Marsh Failed to Provide Timely Notice of the SFFA Action to Harvard's Excess Liability Insurers ..........................................................3

    C.    Harvard Sues Marsh As Soon as the Parties' Tolling Agreement Ends ................4

III.    LEGAL STANDARD ...................................................................................5

IV.    ARGUMENT ...............................................................................................6

    A.    The Law of Massachusetts—Not New York—Controls the Statute-of-Limitations Analysis .............................................................7

        1.    Massachusetts' "Functional Approach" Requires the Application of Massachusetts' Statute-of-Limitations Rules ...........................................7

        2.    Marsh's Simplistic Default to New York Law Is Both Legally Incorrect and, as a Practical Matter, Would Still Result in the Application of Massachusetts' Statute-of-Limitations Rules ...................11

            a.    Marsh Fails to Conduct a Proper "Functional Approach" .............12

            b.    Even If Marsh's Cases Were Correctly Decided, They Would Compel the Application of Massachusetts Law ................14

    B.    Under Massachusetts Law, Harvard's Claims Are Timely .................................16

        1.    Harvard's Claims Accrued in May 2017, When It First Discovered the Breach ........................................................16

            a.    The Discovery Rule Tolls the Accrual of Harvard's Claims .........16

            b.    The Continuing Representation Doctrine Also Tolls the Accrual of Harvard's Claims .......................................18

        2.    Under Massachusetts' Statute-of-Limitations Rules, Harvard's Claims Would Have Been Timely Through February 11, 2024 ...............19

C.    Harvard's Declaratory-Judgment Claim (Count Two) Is Not Duplicative of Its Breach-of-Contract Claim (Count One) ......................................................20

V.    CONCLUSION................................................................................................................20

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**CASES**

*2138747 Ontario, Inc. v. Samsung C & T Corp.*,
    103 N.E.3d 774 (N.Y. 2018) ................................................................................15

*Am. Express Co. v. Rui*,
    No. CV-18-01281-PHX-DWL, 2020 WL 2395103 (D. Ariz. May 12, 2020) .......16

*Andersen v. Lopez*,
    957 N.E.2d 726 (Mass. App. Ct. 2011) ...............................................................8, 9

*Babeu v. Apple, Inc.*,
    No. 21-CV-11967-AK, 2022 WL 3586078 (D. Mass. Aug. 22, 2022) .......... *passim*

*Berkshire Mut. Ins. Co. v. Burbank*,
    664 N.E.2d 1188 (Mass. 1996) ..............................................................................17

*Camreta v. Greene*,
    563 U.S. 692 (2011) ...............................................................................................13

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
    596 U.S. 107 (2022) .................................................................................................7

*Cheschi v. Bos. Edison Co.*,
    654 N.E.2d 48 (Mass. App. Ct. 1995) ...................................................................10

*Doe v. Trs. of Bos. Coll.*,
    942 F.3d 527 (1st Cir. 2019) ..................................................................................13

*Doe v. Word of Life F'ship, Inc.*,
    No. 11-40077-TSH, 2012 WL 2343671 (D. Mass. June 19, 2012)....................7, 16

*Fid. Union Tr. Co. v. Field*,
    311 U.S. 169 (1940)................................................................................................13

*Freeman v. Package Mach. Co.*,
    865 F.2d 1331 (1st Cir. 1988)................................................................................13

*Hendrickson v. Sears*,
    310 N.E.2d 131 (Mass. 1974) ................................................................................17

*Holbrook v. Bos. Sci. Corp.*,
    487 F. Supp. 3d 100 (D. Mass. 2020) ....................................................................16

*In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.*,
    76 F. Supp. 3d 294 (D. Mass. 2015) .................................................................11, 16

*Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*,
   560 N.E.2d 122 (Mass. App. Ct. 1990) ...............................................................17

*Kahn v. Royal Ins. Co.*,
   709 N.E.2d 822 (Mass. 1999) ..............................................................................10

*Klaxon v. Stentor Elec. Mfg.*,
   313 U.S. 487 (1941)............................................................................................6, 7

*Lawrence Gen. Hosp. v. Cont'l Cas. Co.*,
   90 F.4th 593 (1st Cir. 2024)...............................................................................5, 17

*Lerner v. Sinovac Biotech Ltd.*,
   No. CV 22-12063-NMG, 2023 WL 5959596 (D. Mass. Sept. 13, 2023)..................6

*Lyons v. Nutt*,
   763 N.E.2d 1065 (Mass. 2002) .........................................................................18, 19

*Maxum Indem. Co. v. Thermax, Inc.*,
   No. CV 19-10583-NMG, 2020 WL 9743907 (D. Mass. Sept. 11, 2020)...............20

*Monsarrat v. Newman*,
   28 F.4th 314 (1st Cir. 2022).............................................................................5, 18

*Murphy v. Smith*,
   579 N.E.2d 165 (Mass. 1991) ..........................................................................18, 19

*New Eng. Tel. & Tel. Co. v. Gourdeau Const. Co.*,
   647 N.E.2d 42 (Mass. 1995) .....................................................................6, 8, 9, 13

*Nierman v. Hyatt Corp.*,
   808 N.E.2d 290 (Mass. 2004) ..............................................................................8, 9

*OrbusNeich Med. Co., BVI v. Bos. Sci. Corp.*,
   694 F. Supp. 2d 106 (D. Mass. 2010) ...............................................12, 13, 14, 15

*Parr v. Rosenthal*,
   57 N.E.3d 947 (Mass. 2016) .............................................................................18, 19

*Petrucci v. Esdaile*,
   175 N.E.3d 1239, 2021 WL 4535671 (Mass. App. Ct. 2021) ......................9, 13, 14

*Portfolio Recovery Assocs., LLC v. King*,
   927 N.E.2d 1059 (N.Y. 2010).................................................................................15

*President & Fellows of Harvard Coll. v. Zurich Am. Ins. Co.*,
   77 F.4th 33 (1st Cir. 2023).......................................................................................4

*Revive You Media LLC v. Esquire Bank*,
   No. CV-18-00541-PHX-DGC, 2018 WL 2164379 (D. Ariz. May 10, 2018) ..........14

iv

*Santana-Castro v. Toledo-Dávila*,
    579 F.3d 109 (1st Cir. 2009)....................................................................5, 6

*Shamrock Realty Co. v. O'Brien*,
    890 N.E.2d 863 (Mass. App. Ct. 2008) ..................................................8, 13

*Shaw's Super-markets, Inc. v. Melendez*,
    173 N.E.3d 356 (Mass. 2021) .......................................................................19

*Smith v. Prudential Ins. Co. of Am.*,
    88 F.4th 40 (1st Cir. 2023)......................................................................7, 12

*Taygeta Corp. v. Varian Assocs., Inc.*,
    763 N.E.2d 1053 (Mass. 2002) ....................................................................19

*Torres-Ronda v. Nationwide Mut. Ins. Co.*,
    18 F.4th 80 (1st Cir. 2021)...........................................................................12

*Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*,
    524 F.3d 315 (1st Cir. 2008) ..........................................................................5

*Watterson v. Page*,
    987 F.2d 1 (1st Cir. 1993).............................................................................8

*Williams v. Ely*,
    668 N.E.2d 799 (1996)................................................................................17

## STATUTES

28 U.S.C. § 1404(a) ..........................................................................................13

Mass. Gen. Laws c. 260, § 2 ............................................................................19

## RULES

Fed. R. Civ. P.
    12(b)(6) ...........................................................................................................5
    57.....................................................................................................................20

## TREATISES

Restatement (Second) of Conflict of Laws § 142 (1988) ...............................6, 8, 11, 14

Marsh is correct that "basic math" controls this partial motion to dismiss. But Marsh's calculations were doomed from the jump, because Marsh's motion looks to the wrong state's governing law. By incorrectly applying the statute-of-limitations rules of New York rather than Massachusetts, Marsh both (i) miscalculated the date when Harvard's claims accrued and (ii) accounted for the wrong number of days of tolling.

Under governing Massachusetts law, Harvard timely filed its contract-based broker malpractice claims against Marsh. Therefore, the Motion to Dismiss should be denied.

## I.    INTRODUCTION

Under controlling Supreme Court, First Circuit, and Supreme Judicial Court precedent, the statute-of-limitations rules of the forum state (Massachusetts) determine the timeliness of Harvard's contract-based claims. Under those rules, Harvard's claims are plainly timely.

There are three parts to the analysis. *First*, the Court must apply the choice-of-law rules of the forum state, Massachusetts, to determine which state's laws govern the statute of limitations. Massachusetts courts apply a "functional approach" that defaults to Massachusetts statute-of-limitations rules so long as Massachusetts has a substantial interest in the claims. Given the claims' intense nexus to the Commonwealth—the contract involved coverage for a Massachusetts insured and was signed, performed, and breached here—Massachusetts has a substantial interest in the claims, requiring the application of Massachusetts statute-of-limitations rules.

*Second*, the Court must identify the governing state's statute-of-limitations rules for contract-based professional malpractice claims. Massachusetts provides a six-year limitations period for breach-of-contract claims. But Massachusetts does not start the limitations clock on any breach-of-contract claim until the plaintiff knows or should know about the breach. Moreover, for claims specifically involving professional malpractice—including contract claims—a plaintiff must have actual knowledge of the breach to trigger the limitations period; such claims do not

accrue even if the plaintiff should have known about the breach earlier. Massachusetts further tolls claims where the parties have agreed to tolling or where the SJC has mandated it (*e.g.*, because of the pandemic).

*Finally*, the Court must apply those statute-of-limitations rules to the facts alleged in Harvard's Complaint. Harvard's claims accrued when, accepting all well-pleaded facts as true and drawing all inferences in Harvard's favor, Harvard first discovered Marsh's professional malpractice: no earlier than May 1, 2017, when Harvard first learned that Marsh failed to provide notice of Harvard's claim (the SFFA Action) to Harvard's excess liability insurers.[1] Thus, the last day for Harvard to file its contract-based claims was no earlier than February 11, 2024, which is six years and 286 days after the accrual date based on (i) Massachusetts' six-year limitations period for contract claims, (ii) 106 days of COVID-19 tolling by order of the Supreme Judicial Court, and (iii) 180 days of tolling per a written agreement between the parties.

Harvard timely filed its lawsuit on October 25, 2023, long before the end of the limitations/tolling period. Marsh's partial motion to dismiss should therefore be denied.

## II.    BACKGROUND

### A.    Marsh Assumed a Duty to Harvard to Ensure That Timely Notice Was Provided to Harvard's Insurers

At all times relevant to this action, Defendant Marsh USA Inc. ("Marsh") served as Harvard's insurance broker and risk management consultant. *Id.* ¶ 18. Marsh provided all of its services to Harvard using account executives who worked primarily out of Marsh's New England regional office in Boston, Massachusetts. *Id.* ¶ 17.

---

[1] The Complaint does not identify precisely when in May 2017 Harvard learned of Marsh's breach but context suggests the middle of the month. *See, e.g.*, Compl. ¶ 59. Solely for the sake of argument, this Opposition assumes—contrary to the Court's requirement to draw all reasonable inferences in Harvard's favor—that Harvard discovered the breach on May 1, 2017.

The contract that is relevant to this motion—the "Broker Agreement" dated July 18, 2014—was prepared and signed by Marsh in its Boston office.  *Id.* ¶¶ 17, 20, Ex. A (Broker Agreement).  Both Harvard and Marsh expected the Broker Agreement to be performed primarily and substantially in Massachusetts.  *Id.* ¶ 17.  As part of its contractual obligation, Marsh assured Harvard that it would exercise independent professional judgment, advise Harvard, and act upon its independent professional judgment as to matters within the scope of its engagement with Harvard.  *Id.* ¶ 19.  Such matters included the duty to ensure that adequate and timely notice was provided to all potentially impacted insurers with respect to all matters triggering claims-made coverages procured by Marsh.  *Id.* ¶¶ 24–25; Ex. A (Broker Agreement) at § 1.

## B.    Marsh Failed to Provide Timely Notice of the SFFA Action to Harvard's Excess Liability Insurers

Students for Fair Admissions ("SFFA") filed a lawsuit against Harvard (the "SFFA Action") on November 17, 2014.  *Id.* ¶ 37.  The next day, Harvard emailed Marsh asking it to report the matter to AIG and to provide an analysis as to coverage for the claim.  *Id.* ¶¶ 48–49.

Marsh provided notice to AIG—but not to any excess insurers, either then or over the next two-and-a-half years.  *Id.* ¶¶ 49–51.  The universal standard of care is for a broker in Marsh's position to provide notice to the entire tower of claims-made insurers, yet at no time did Marsh exercise any independent professional judgment with respect to the insurers to whom notice should be provided.  In the event the broker has any doubt, the universal standard requires a competent broker (1) to inform the policyholder (Harvard) of the need to notify excess insurers; (2) to clarify whether the policyholder did or did not want notice to be provided to the excess insurers; and (3) if the latter, to confirm in writing that the policyholder has instructed the broker ***not*** to provide notice to particular insurers.  *Id.* ¶¶ 72, 74.  Indeed, this very standard of care was followed by the broker that handled Harvard's general liability insurance program, Risk Strategies Company,

which placed the entire tower of primary and excess commercial general liability ("CGL") carriers on notice of the SFFA Action, despite the absence of an initial explicit request from Harvard that the broker do so. *Id.* ¶ 53. But Marsh took none of the required steps.

Over the next two-and-a-half years, Harvard and Marsh communicated multiple times about the SFFA Action. *Id.* ¶ 54. Despite intense litigation activities and growing legal costs during this period, Marsh never informed Harvard that the claim had not been reported to the first-layer excess insurer (Zurich) or other excess insurers, nor did Marsh advise Harvard that notice should be provided to Zurich and the other excess insurers. *Id.* ¶¶ 54–57. Only in May 2017, after Harvard queried Marsh about providing an update to Zurich about the SFFA Action, did Marsh disclose that it had not yet reported the SFFA Action to Zurich. *Id.* ¶¶ 57–58.

Harvard immediately demanded that Marsh formally notify all excess E&O insurers, including Zurich, which Marsh did by letter dated May 23, 2017. *Id.* ¶ 59. But by that time, it was too late. Zurich denied coverage by letter on October 25, 2017, due solely to late notice of the SFFA Action. *Id.* ¶ 63, Ex. E. At the same time, Zurich admitted that, had notice been timely, it would have provided coverage for the SFFA Action. *Id.* ¶¶ 62–64, Ex. E. On August 9, 2023, the First Circuit upheld Zurich's denial of coverage due to untimely notice. *Id.* ¶ 69; *see President & Fellows of Harvard Coll. v. Zurich Am. Ins. Co.*, 77 F.4th 33 (1st Cir. 2023).[2]

## C.  Harvard Sues Marsh As Soon as the Parties' Tolling Agreement Ends

On May 1, 2023, Marsh and Harvard entered into a Tolling Agreement, effective April 28, 2023, tolling "any and all claims [Harvard] may have against Marsh in connection with the SFFA Litigation" for 180 days, *i.e.*, until October 25, 2023. Compl. ¶ 77, Ex. F. When the Tolling

---

[2] Marsh failed to give notice not just to Zurich but also to Harvard's other excess carriers. *See* Compl. ¶¶ 3–4, 8–9, 13.

Agreement terminated on October 25, 2023, Harvard filed suit against Marsh in Massachusetts Superior Court.  *See generally id.* (dated Oct. 25, 2023).  Marsh removed the case to this Court on December 8, 2023.  *See* ECF No. 2.

Harvard's complaint alleges four causes of action against Marsh: (1) a contract-based broker malpractice claim rooted in Marsh's breach of its duties set forth in the Broker Agreement; (2) a claim seeking a declaratory judgment to the extent the breach of contract has future ramifications; (3) a tort-based broker malpractice claim rooted in Marsh's negligence; and (4) a claim seeking a declaratory judgment to the extent Marsh's negligence has future ramifications. *See* Compl. ¶¶ 80–110.

On January 5, 2024, Marsh moved to dismiss Counts One and Two of the Complaint only. *See* Def.'s Partial Mot. to Dismiss, ECF No. 10.  Marsh has not challenged Counts Three and Four.

### III.    LEGAL STANDARD

When reviewing Marsh's motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in [Harvard's] favor."  *Lawrence Gen. Hosp. v. Cont'l Cas. Co.*, 90 F.4th 593, 598 (1st Cir. 2024) (citation omitted).

"Dismissal based on an affirmative defense is appropriate only where there is 'no doubt' that the plaintiff's claim is barred by the raised defense."  *Monsarrat v. Newman*, 28 F.4th 314, 318 (1st Cir. 2022) (quotation marks omitted).  And "the facts establishing the defense" must be "clear 'on the face of the plaintiff's pleadings.'"  *Santana-Castro v. Toledo-Dávila*, 579 F.3d 109, 114 (1st Cir. 2009) (citing *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.,* 524 F.3d 315, 320 (1st Cir. 2008)).  For a statute-of-limitations defense, facts sufficient to support dismissal exist only "[w]here the dates included in the complaint show that the limitations period has been exceeded

and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations period or equitable estoppel." *Id.*

## IV.    ARGUMENT

Marsh's motion to dismiss rests on its erroneous assumption that the statute-of-limitations rules of New York rather than Massachusetts govern this case.  But Massachusetts law applies, and under Massachusetts law, Harvard's contract-based claims are timely.

The Court, sitting in diversity, must apply Massachusetts' choice-of-law rules to determine which state's law controls the statute-of-limitations analysis.  "To determine the applicable statute of limitations, this Court will apply the choice-of-law regime of Massachusetts, the forum state." *Lerner v. Sinovac Biotech Ltd.*, No. CV 22-12063-NMG, 2023 WL 5959596, at *5 (D. Mass. Sept. 13, 2023) (citing *Klaxon v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941)).  "Massachusetts courts employ the 'functional approach,' based on the Restatement (Second) of Conflict of Laws § 142 (1988), to determine the applicable statute of limitations." *Id.*  The functional approach defaults to Massachusetts law on all statute-of-limitations issues, so long as Massachusetts has a substantial interest in maintaining the broker malpractice claims.  *See New Eng. Tel. & Tel. Co. v. Gourdeau Const. Co.*, 647 N.E.2d 42, 45 (Mass. 1995) ("Restatement § 142(2)(a) states that Massachusetts should apply its own statute of limitations permitting a claim to be asserted unless 'maintenance of the claim would serve no substantial interest of [Massachusetts].'" (alteration in original)).

Massachusetts has a substantial interest in the claims here.  The Complaint's allegations demonstrate that Massachusetts is the locus of both the contract and the activities that resulted in this claim.  Harvard is a Massachusetts university.  Harvard contracted with Marsh via personnel in Marsh's Boston office.  Only Marsh personnel from its Boston office managed Harvard's account.  Both Harvard and Marsh expected the parties' respective obligations to be performed in Massachusetts.  Marsh's breach—the failure to provide timely notice of a claim to Harvard's

excess insurer, Zurich—occurred in Massachusetts.  And Marsh's breach deprived Harvard of coverage for Massachusetts-based risks.  Massachusetts has a substantial interest in enforcing obligations owed by a Massachusetts-based insurance broker providing professional services in Massachusetts to a Massachusetts-based policyholder to insure risks located in Massachusetts. Accordingly, Massachusetts' statute-of-limitations rules control here.

Applying Massachusetts' statute of limitations, along with the tolling required by the Commonwealth for COVID-19 and by the parties' Tolling Agreement, Harvard filed its contract-based claims months before the limitations period ended.  Under Massachusetts' discovery rule, Harvard's contract-based claims only accrued when Harvard discovered the breach, no earlier than May 1, 2017.  Adding six years for Massachusetts statute of limitations for contract-based claims, 106 days for COVID-19 tolling, and an additional 180 days according to the parties' Tolling Agreement, those claims would be timely through February 11, 2024.  Because Harvard filed Counts One and Two on October 25, 2023, Harvard's claims are timely.

### A.      The Law of Massachusetts—Not New York—Controls the Statute-of-Limitations Analysis

#### 1.      Massachusetts' "Functional Approach" Requires the Application of Massachusetts' Statute-of-Limitations Rules

The statute-of-limitations rules of Massachusetts, rather than New York, apply to Harvard's contract-based broker malpractice claims. "According to long-settled precedent, a federal court sitting in diversity borrows the forum State's choice-of-law rule." *Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022) (citing *Klaxon Co.*, 313 U.S. at 496); *accord Smith v. Prudential Ins. Co. of Am.*, 88 F.4th 40, 49 (1st Cir. 2023); *Doe v. Word of Life F'ship, Inc.*, No. 11-40077-TSH, 2012 WL 2343671, at *2 (D. Mass. June 19, 2012) ("[I]n diversity actions, where more than one state has a connection to a plaintiff's claims, federal courts apply the statute of limitations that would be applied by the forum state.").

Massachusetts has clearly defined how to determine which state's statute-of-limitations rules will apply. To determine "whether the Massachusetts or [another state] limitations statute controls the claim," Massachusetts courts use "a functional approach that treats the issue as a choice of law question, as stated in the Restatement (Second) of Conflict of Laws § 142 (Supp. 1989)." *Nierman v. Hyatt Corp.*, 808 N.E.2d 290, 292 (Mass. 2004) (citing *Gourdeau Constr. Co.*, 647 N.E.2d at 46). Under that approach, "the forum State generally will apply its own statute of limitations to permit a claim unless: '(a) maintenance of the claim would serve no substantial interest of the forum; *and* (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.'" *Id.* (emphasis added) (quoting Restatement (Second) of Conflict of Laws § 142 (Supp. 1989)); *accord Andersen v. Lopez*, 957 N.E.2d 726, 728 (Mass. App. Ct. 2011).

Massachusetts' "functional approach" neither ignores nor blindly follows a contractual choice-of-law provision, but instead considers such a provision as just one factor in the analysis. The Broker Agreement designates New York law as governing,[3] but such a provision "is not . . . controlling with particular reference to the statute of limitations issue." *Shamrock Realty Co. v. O'Brien*, 890 N.E.2d 863, 868 n.9 (Mass. App. Ct. 2008) (citation omitted). Instead, Massachusetts courts follow the functional approach *even when faced with an explicit choice-of-law provision*. *See, e.g.*, *Gourdeau Const. Co.*, 647 N.E.2d at 43, 45, 46 (adopting the functional approach of Restatement (Second) of Conflict of Laws § 142 even where the contract's terms

---

[3] The applicable 2014 Broker Agreement states only that "[t]he laws of the State of New York govern this Agreement." Compl., Ex. A § 9. By contrast, subsequent versions of the Broker Agreement excepted New York's conflict-of-law principles, by stating further that "[t]he laws of the State of New York govern this Agreement, without regard to choice of law principles." Sack Aff., Ex. A (2015–16 Agreement) § 9; *id.*, Ex. B (2017–18 Agreement) § 9; *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (courts may take judicial notice of "documents the authenticity of which are not disputed by the parties").

provided that the "Contract shall be governed by the law of" New Hampshire); *Petrucci v. Esdaile*, 175 N.E.3d 1239, 2021 WL 4535671, at *1–2 (Mass. App. Ct. 2021) ("[D]espite this language [that the agreement 'shall be governed exclusively by the laws of the State of Delaware'], under the requisite functional analysis, the Massachusetts limitations period applied.").

Under the functional approach, "Massachusetts will apply its own statute of limitations to allow the action to proceed unless some exceptional circumstances about the case make it unreasonable to do so or unless, after analyzing the interests of Massachusetts and [the other forum], allowing the action to proceed would serve no substantial Massachusetts interest, and [the other forum] has a more significant relationship to the parties and the accident than does Massachusetts." *Andersen*, 957 N.E.2d at 728.

To determine whether "allowing the action to proceed" would serve any substantial Massachusetts interest, Massachusetts courts examine several interests including (i) where "[e]ach party has its principal place of business," *Gourdeau Const. Co.*, 647 N.E.2d at 45, and if a party is "not a [Massachusetts] corporation," whether it at least "operates a business there and employs [Massachusettsans]," *Nierman*, 808 N.E.2d at 293; (ii) where the parties' "contract was executed," *Gourdeau Const. Co.*, 647 N.E.2d at 45; (iii) where the "events constituting the alleged negligence [or breach] took place," *Nierman*, 808 N.E.2d at 293; and (iv) "where the alleged injuries were suffered," *id*. Massachusetts courts may also consider (v) a "choice of law provision [as] one, but not the only, factor." *Petrucci*, 2021 WL 4535671, at *1. Finally, where insurance issues are at play, Massachusetts courts also consider (vi) where the "activity and the protection [plaintiffs] purchased to guard against financial losses that activity might cause are centered." *Andersen*, 957 N.E.2d at 729.

Here, although the parties chose New York law in their choice-of-law provision, every other interest points to Massachusetts. Harvard is a university incorporated and located in Massachusetts. Compl. ¶ 16. Although Marsh is a Delaware corporation with a principal place of business in New York, it maintains a regional office in Boston, Massachusetts, and all of the personnel on Harvard's account worked out of that Boston office. *Id.* ¶ 17. The Broker Agreement was created and signed by Marsh in that Boston office. *Id.* ¶ 17, Ex. A. Both Harvard and Marsh expected the contract would be performed primarily and substantially in Massachusetts. Compl. ¶ 17. And Marsh's breach occurred in Massachusetts, which is also where Harvard suffered harm. *Id.* ¶¶ 17, 57–59.

As it relates to insurance specifically, Massachusetts has a substantial interest in enforcing the obligations owed by Massachusetts-based insurance brokers providing professional services in Massachusetts to Massachusetts-based policyholders to insure risks located in Massachusetts. This reflects the Commonwealth's interest in protecting Massachusetts policyholders and the persons they may foreseeably harm, as their respective abilities to recover for injuries may be impaired by broker-caused failures to provide timely notice. *Cf. Kahn v. Royal Ins. Co.*, 709 N.E.2d 822, 825 (Mass. 1999) ("Massachusetts would have a substantial interest in the timeliness of an action to enforce rights under a Massachusetts . . . insurance policy.");[4] *Cheschi v. Bos. Edison Co.*, 654 N.E.2d 48, 53 (Mass. App. Ct. 1995) (emphasizing the importance of "protect[ing] lay policyholders from . . . strict enforcement of notice provisions [that] would result in a forfeiture" (internal quotation marks and citations omitted)). Where, as here, a broker's inaction

---

[4] The facts of this case are nearly the mirror opposite of those in *Kahn*, where the SJC found that Florida's statute-of-limitations rules should govern a "claim involv[ing] an insured under a Florida insurance policy issued in Florida by a Florida producer [*i.e.*, broker] to a Florida motor vehicle owner, covering a vehicle bearing Florida plates and operated by a vice-president of the Florida insured." *Kahn*, 709 N.E.2d at 824–25.

foreseeably resulted in a late-notice-based forfeiture of claims-made coverage, Massachusetts' interest in protecting policyholders naturally extends to suits that seek to remedy such inaction.

In sum, all of the relevant persons, documents, conduct, and consequences are in Massachusetts.  Accordingly, Massachusetts has a substantial interest in Harvard's broker malpractice claims against Marsh proceeding, compelling the application of Massachusetts statutes-of-limitations rules.[5]

### 2.    Marsh's Simplistic Default to New York Law Is Both Legally Incorrect and, as a Practical Matter, Would Still Result in the Application of Massachusetts' Statute-of-Limitations Rules

Marsh engages in no choice-of-law analysis, but instead simply assumes that New York's statute-of-limitations rules automatically govern because the Broker Agreement's choice-of-law clause designates New York law.  *See* Mem. 9–10 (Marsh asserts that, "[u]nder 'Massachusetts principles of contract interpretation, choice-of-law provisions such as the one[] at issue here apply to procedural *and* substantive law, thereby requiring the forum court to apply the statutes of limitations of the state named in the choice-of-law-provision'—here, New York." (quoting *Babeu v. Apple, Inc.*, No. 21-CV-11967-AK, 2022 WL 3586078, at *3 (D. Mass. Aug. 22, 2022))).

Marsh is wrong for two reasons.

- *First*, both Marsh and the unpublished opinion on which it relies violate bedrock law by failing to engage in Massachusetts' functional-approach analysis; as explained, that analysis compels that Massachusetts law apply to the statute of limitations.

---

[5] Because Massachusetts has a substantial interest, the Court need not determine whether, under Restatement (Second) of Conflict of Laws §142, Massachusetts has a more substantial interest than New York, though it plainly does.  *See In re Fresenius Granuflo/NaturaLyte Dialysate Prod. Liab. Litig.*, 76 F. Supp. 3d 294, 305 (D. Mass. 2015) (explaining that the two prongs of Section 142's exception to applying Massachusetts' statute-of limitations rules apply "sequentially," *i.e.*, "if there is an affirmative answer [to the first prong], [the court need] not consider[] the question posed by the second prong of the inquiry as to which state has the more significant relationship").

- *Second*, the case Marsh relies on involves a materially different contractual choice-of-law clause, one that designates the substantive law of a foreign state to govern specifically without the application of any choice-of-law principles. Marsh's case law is inapposite because, here, the Broker Agreement contains no such carveout. Applying the choice-of-law principles of the forum state, Massachusetts, leads to the application of Massachusetts' statute-of-limitations rules. And, even if New York's choice-of-law principles somehow applied, they too would require the application of the forum state's—Massachusetts'—statute-of-limitations rules.

a.      **Marsh Fails to Conduct a Proper "Functional Approach"**

Marsh skips over the choice-of-law analysis, relying wholly on an unpublished decision that in turn relied on a single case. *See Babeu*, 2022 WL 3586078 at *3–4 (citing *OrbusNeich Med. Co., BVI v. Bos. Sci. Corp.*, 694 F. Supp. 2d 106, 112–14 (D. Mass. 2010)). As discussed below, these cases involve materially distinguishable choice-of-law provisions. But even more importantly, to the extent *Babeau* and *OrbusNeich* purport to hold that a choice-of-law provision controls which state's laws govern the statute-of-limitations analysis, those holdings were reached without conducting the functional-approach analysis that Massachusetts requires to resolve threshold statute-of-limitations issues. Because such an analysis would result in Massachusetts' statute-of-limitations rules applying, those holdings conflict directly with Massachusetts law and deserve no weight.

The "goal" of a federal court sitting in diversity "is to predict how the state's highest court would rule on the legal questions before [the federal court], even if [the federal court's] independent judgment on the question may differ." *Smith*, 88 F.4th at 47 (quotation marks omitted). Here, Massachusetts law—as articulated in an SJC decision and two Massachusetts Appeals Court decisions (one from just three years ago)[6]—applies a functional approach that

_____

[6] Even if the SJC had not ruled on this issue, "[i]n the absence of more convincing evidence of what the state law is, [an intermediate state court decision] should be followed by a federal court in deciding a state question." *Torres-Ronda v. Nationwide Mut. Ins. Co.*, 18 F.4th 80, 84 (1st Cir.

defaults to Massachusetts statute-of-limitations rules regardless of a choice-of-law clause providing for the application of another state's laws. *See Gourdeau Const. Co.*, 647 N.E.2d at 43, 45, 46 (functional approach applies despite choice-of-law provision); *Petrucci*, 2021 WL 4535671, at *1–2 ("despite [choice-of-law provision], under the requisite functional analysis, the Massachusetts limitations period applied"); *Shamrock Realty Co.*, 890 N.E.2d at 868 n.9 (2008) (choice-of-law provision "is not . . . controlling" as "to the statute of limitations issue").

In short, a functional approach yields a clear outcome: Massachusetts law governs as to the applicable statute of limitations. Neither *Babeu* nor *OrbusNeich* even mention Massachusetts' functional approach.[7] Thus, Marsh's position contradicts established Massachusetts law and is analytically invalid.

---

2021) (second alteration in original) (quoting *Fid. Union Tr. Co. v. Field*, 311 U.S. 169, 177–78 (1940)).

By contrast, neither *Babeu* nor *OrbusNeich* carries authoritative weight on this issue of state law. *See Camreta v. Greene*, 563 U.S. 692, 709 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). This is particularly true here, as the portions of *Babeu* and *OrbusNeich* that Marsh cites were *dicta*. In *Babeu*, the parties did not actually dispute which state's statute-of-limitations rules applied, thereby mooting the issue. *See Babeu*, 2022 WL 3586078, at *3 ("Apple contends that, pursuant to the choice-of-law agreement, California's statutes of limitations govern, and Babeu does not argue otherwise."). And in *OrbusNeich*, because the case was transferred to Massachusetts federal court from Virginia under 28 U.S.C. § 1404(a), the court should have applied the law of the plaintiff's chosen forum (Virginia) before conducting a statute-of-limitations analysis, as the *OrbusNeich* court itself recognized. 694 F. Supp. 2d at 113 ("[T]he transferee court is required to apply the statute of limitations of the transferor court's forum state, because that is what the transferor court would have done had the action remained there." (citation omitted)).

[7] To the extent Marsh asks this Court to change Massachusetts law, doing so ignores that a federal court sitting in diversity "must take state law as it finds it," *Doe v. Trs. of Bos. Coll.*, 942 F.3d 527, 535 (1st Cir. 2019) (citation omitted), and is especially improper considering Marsh removed this case to federal court, *see id.*; *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1349 (1st Cir. 1988) ("A defendant who chooses to remove a case from a state forum to a federal one is hard put to complain if the federal court follows state practice in regard to state-law claims contained in the complaint.").

b.    **Even If Marsh's Cases Were Correctly Decided, They Would Compel the Application of Massachusetts Law**

Even if this Court were to take Marsh's cases at face value, they involved materially different choice-of-law clauses and are inapposite here.  There, the choice-of-law clauses—unlike the one in the Broker Agreement—specifically excepted conflict-of-law principles from the body of law that must be followed.  *See Babeu*, 2022 WL 3586078 at *1 (contracts were "governed by California law, *without giving effect to its conflict of law provisions*" (emphasis added)); *OrbusNeich*, 694 F. Supp. 2d at 113 ("Agreement is governed by the Laws of the Commonwealth of Massachusetts, USA, *without regard for the conflicts of law provisions*" (emphasis added)).  In other words, the provisions in *Babeu* and *OrbusNeich* instructed courts to apply the law contractually chosen by the parties without conducting a choice-of-law analysis.  *See Babeu*, 2022 WL 3586078 at *3–4 (limiting its holding to "choice-of-law provisions such as the ones at issue [t]here" and in *OrbusNeich* "that contain language regarding conflicts of law" (emphasis added)).

For courts that give choice-of-law provisions dispositive weight,[8] this distinction makes all the difference.  Those courts hold that parties can override the general rule that "contractual choice of law provisions apply only to issues of substantive law and do not govern questions of procedural

---

[8] As explained above, Massachusetts always applies the functional approach and Restatement (Second) of Conflict of Laws § 142 even if the parties' agreement has a choice-of-law provision.  *See supra* Part IV.A.2.a (collecting cases).  The Massachusetts Appeals Court has suggested that is so even where—unlike here—the parties' choice-of-law provision is explicit that conflict-of-law principles do not apply.  *Petrucci*, 2021 WL 4535671, at *1 n.6 (expressing "skeptic[ism] of the . . . suggestion. . . that a choice of law provision explicitly addressing the statute of limitations would require departure from the functional approach"); *see also, e.g.*, *Revive You Media LLC v. Esquire Bank*, No. CV-18-00541-PHX-DGC, 2018 WL 2164379, at *3 (D. Ariz. May 10, 2018) ("The merchant agreements provide that their terms 'shall be governed and construed in accordance with the laws of the State of New York, without regard to internal principles of conflict of laws, and federal law.' . . .  The last phrase of the parties' choice-of-law provision in this case suggests that New York law should be applied without regard to conflict of law principles like those in [the Restatement], but Arizona courts do not honor such provisions.  Parties cannot contractually bypass the [Restatement] analysis.").

law that may arise in a contractual dispute" by including language that instructs the court to "disregard all conflicts of law provisions that might otherwise apply, in favor of straightforwardly applying [the chosen state's] law to all issues arising out of the contractual dispute, whether procedural or substantive." *OrbusNeich*, 694 F. Supp. 2d at 113–14; *Babeu*, 2022 WL 3586078, at \*4 (summarizing *OrbusNeich*).  Unlike the choice-of-law provisions at issue in *Babeu* and *OrbusNeich*, however, the choice-of-law provision in the applicable 2014 Broker Agreement contains no instruction to disregard choice-of-law principles.[9]  Even assuming that *Babeu* and *OrbusNeich* were rightly decided then, the proposition for which Marsh cites them—that a federal Massachusetts court must "apply the statutes of limitations of the state named in the choice-of-law-provision"—would not apply to the Broker Agreement here.  The Court would instead apply Massachusetts' choice-of-law principles, which require the application of Massachusetts' statute-of-limitations rules.

Further, even if New York choice-of-law principles somehow applied, the next question would be whether a New York court would apply New York's or Massachusetts' statute-of-limitations rules.  In New York, "[c]hoice of law provisions typically apply to only substantive issues, and statutes of limitations are considered 'procedural.'" *Portfolio Recovery Assocs., LLC v. King*, 927 N.E.2d 1059, 1061 (N.Y. 2010) (citations omitted).  That is, under New York law, a "choice of law provision cannot be read to encompass th[e] limitations period" where there is "no express intention in the agreement that [the referenced state's] statute of limitations was to apply." *Id.*  Instead, where a choice-of-law provision does not reference the state's statute of limitations, "New York would apply . . . [the] procedural law . . . of the forum." *2138747 Ontario, Inc. v.*

---

[9] Notably, the Broker Agreements for subsequent years expressly require the parties to apply New York law and to do so "without regard to choice of law principles." *See*, *supra*, n.3.

*Samsung C & T Corp.*, 103 N.E.3d 774, 778 (N.Y. 2018); *see Am. Express Co. v. Rui*, No. CV-18-01281-PHX-DWL, 2020 WL 2395103, at *2 (D. Ariz. May 12, 2020) ("[Even if the Court were] to follow the choice-of-law provision in the parties' contract, which calls for the application of New York law, this outcome would not inexorably lead to the conclusion that New York's six-year statute of limitations applies . . . because the choice-of-law provision in the parties' contract is silent as to whether it encompasses the statute of limitations." (internal citations omitted)). Here, the forum is Massachusetts. Thus, even under New York choice-of-law principles, Massachusetts' statute-of-limitations rules would apply here.

### B.     Under Massachusetts Law, Harvard's Claims Are Timely

Because Massachusetts law applies, and because Harvard did not learn of Marsh's failure to notify Zurich of the SFFA Action until May 2017, Harvard's claims are timely. Under Massachusetts' statute-of-limitations rules[10]—including the "discovery rule" and "doctrine of continuing representation"—Harvard's claims accrued, at the earliest, on May 1, 2017. Due to Massachusetts' statute of limitations for breach-of-contract actions, COVID-19 tolling, and the parties' Tolling Agreement, Counts One and Two would not have lapsed until February 11, 2024. Harvard filed this action months prior to that date, and accordingly, its claims are timely.

### 1.     Harvard's Claims Accrued in May 2017, When It First Discovered the Breach

#### a.     The Discovery Rule Tolls the Accrual of Harvard's Claims

Because Harvard did not learn of Marsh's failure to notify Zurich of the SFFA Action until May 2017, the discovery rule tolls Harvard's claims, making them timely. While "[t]he general

---

[10] Massachusetts' statute-of-limitations rules include the calculation of (i) when Harvard's claims accrued; (ii) their limitations period; and (iii) the length of any tolling. *See, e.g.*, *Holbrook v. Bos. Sci. Corp.*, 487 F. Supp. 3d 100, 107 (D. Mass. 2020); *In re Fresenius Granuflo*, 76 F. Supp. 3d at 309; *Word of Life F'ship*, 2012 WL 2343671, at *4.

rule is that a contract action accrues at the time the contract is breached," *Berkshire Mut. Ins. Co. v. Burbank*, 664 N.E.2d 1188, 1189 (Mass. 1996), there is an exception for actions where the breach "is not capable of being discovered because it is based on an 'inherently unknowable' wrong," *Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 560 N.E.2d 122, 126 (Mass. App. Ct. 1990).  An "inherently unknowable" breach is simply one that the plaintiff did not know and reasonably should not have known existed.  *See Williams v. Ely*, 668 N.E.2d 799, 804 n.7 (1996) (explaining that the "inherently unknowable" standard is "no different from, and is used interchangeably with, the 'knew or should have known' standard"). "In those cases, the 'discovery rule' tolls the accrual date of the statutory period until the injured party knows or should know the facts giving rise to the cause of action."  *Int'l Mobiles Corp.*, 560 N.E.2d at 126.

In professional negligence cases, Massachusetts courts hold that, for purposes of the discovery rule, plaintiffs should not have known of faulty work they entrusted to a professional they hired.  *Id.*  ("The discovery rule has been applied in breach of contract claims in those cases involving the rendering of professional services where a client would not be expected to retrace the professional's steps nor be able necessarily to recognize the professional negligence should the client come across it.").  For example, in *Hendrickson v. Sears*, the SJC held that a parcel of land's defective title was inherently unknowable because, to discover the defect, the plaintiff would have had to "duplicate[] [his] attorney's title search."  310 N.E.2d 131, 132, 136 (Mass. 1974).

Harvard plausibly alleged that it did not learn and, for purposes of the discovery rule, should not have learned that Marsh failed to provide notice of the SFFA Action until May 2017. At this stage, the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in [Harvard's] favor," *Lawrence Gen. Hosp.*, 90 F.4th at 598, and it may dismiss based on an affirmative defense only where there is "'no doubt' that the

17

plaintiff's claim is barred by" it, *Monsarrat*, 28 F.4th at 318.  Harvard is not an insurance broker.

Compl. ¶ 16.  Instead, Harvard hired Marsh and relied on both Marsh's expertise as an insurance

broker and the professional commitments that Marsh made to Harvard in that role, including that

Marsh would ensure that adequate and timely notice was provided to Harvard's insurers.  *Id.* ¶¶

19, 24–25.  In short, Harvard entrusted Marsh to provide notice or otherwise advise Harvard as to

when and to whom notice should be given.  Compl. ¶¶ 19, 24–25, 52–53.  Absent "duplicat[ing]"

Marsh's work of providing notice to insurers or "retrac[ing] the professional's steps," Marsh's

failure was "inherently unknowable" to Harvard.  Harvard had no cause to discover Marsh's breach

until it actually learned that Marsh had not provided notice.  Accordingly, Harvard's claim accrued,

at the earliest, on May 1, 2017—the day it discovered the breach.

> **b.** **The Continuing Representation Doctrine Also Tolls the Accrual of Harvard's Claims**

Harvard prevails on the date-of-accrual issue for a second, independent reason:

Massachusetts' continuing representation doctrine.  Applied in the context of professional services,

the doctrine operates as an "exception to the discovery rule" that tolls the accrual of a plaintiff's

malpractice claims against a professional while the professional still represents her, even if the

plaintiff "should have" known about the professional's negligence earlier.  *Parr v. Rosenthal*, 57

N.E.3d 947, 960 (Mass. 2016).  The doctrine "recognizes that a person seeking professional

assistance has a right to repose confidence in the professional's ability and good faith, and

realistically cannot be expected to question and assess the techniques employed or the manner in

which the services are rendered."  *Lyons v. Nutt*, 763 N.E.2d 1065, 1070 (Mass. 2002) (quoting

*Murphy v. Smith*, 579 N.E.2d 165, 168 (Mass. 1991)).  As such, "a wronged client is permitted to

benefit from his or her [professional's] efforts to correct a problem without the disruption of

exploring the viability of a. . . malpractice action."  *Parr*, 57 N.E.3d at 958.  Accordingly, under

the doctrine, the "limitations period does not begin to run until the termination of the [professional] undertaking," *Murphy*, 579 N.E.2d at 168, or until "the client has actual knowledge of harm caused by [the professional's] conduct," *Lyons*, 763 N.E.2d at 1070.  The limitations period does not start running even "[i]f a client reasonably should know that the [professional] has caused the client appreciable harm," so long as she "does not actually know it."  *Parr*, 57 N.E.3d at 961.

Here, as just explained regarding the discovery rule (*supra* Part IV.B.1.a), Harvard did not know that Marsh failed to notify the excess tower of the SFFA Action during the course of Marsh's continued representation as Harvard's broker.  As such, even if Harvard should have known of Marsh's breach earlier, Harvard's breach-of-contract claims against Marsh accrued in May 2017, when Harvard learned of Marsh's failure to notify the excess insurers of the SFFA Action.

### 2. Under Massachusetts' Statute-of-Limitations Rules, Harvard's Claims Would Have Been Timely Through February 11, 2024

In Massachusetts, breach-of-contract claims are subject to a six-year statute of limitations. Mass. Gen. Laws c. 260, § 2.  The SJC tolled the statute of limitations in all cases for 106 days (from March 17, 2020 to June 30, 2020) due to the COVID-19 pandemic.  *See Shaw's Super-markets, Inc. v. Melendez*, 173 N.E.3d 356, 360, 362–63 (Mass. 2021).  Under a Tolling Agreement,[11] Harvard and Marsh agreed to toll the limitations period by 180 days for any of Harvard's claims or potential claims against Marsh concerning the SFFA Action that could still be timely brought as of April 28, 2023.  Compl. ¶ 77, Ex. F. Because Harvard learned of Marsh's lack of notice to Zurich on May 1, 2017 (at the earliest), thus starting the limitations period for Harvard's contract-based broker malpractice claims against Marsh, those claims would have been viable through August 15, 2023, six years and 106 days after the claim accrued.  Because Harvard

---

[11] Massachusetts courts honor such agreements.  *See, e.g.*, *Taygeta Corp. v. Varian Assocs., Inc.*, 763 N.E.2d 1053, 1057 (Mass. 2002).

could still have timely brought those claims against Marsh on April 28, 2023, they fell within the ambit of the parties' Tolling Agreement and were tolled an additional 180 days, until February 11, 2024.

Harvard filed this action on October 25, 2023, the day the Tolling Agreement terminated, *id.* ¶¶ 77–78, and months before the breach-of-contract claim would have lapsed under Massachusetts law. Accordingly, as alleged, Counts One and Two of Harvard's complaint are timely, and the Court should deny Marsh's Partial Motion to Dismiss.

### C.   Harvard's Declaratory-Judgment Claim (Count Two) Is Not Duplicative of Its Breach-of-Contract Claim (Count One)

Contrary to Marsh's protestations, Harvard's claim for declaratory judgment is not unnecessary or duplicative of its breach-of-contract claim. Where, as here, the complaint "involve[s] an insurance breach of contract claim and a declaratory judgment claim" and the court has before it a "Rule 12(b)(6) motion[]," "it is premature to dismiss the declaratory judgment count as duplicative." *Maxum Indem. Co. v. Thermax, Inc.*, No. CV 19-10583-NMG, 2020 WL 9743907, at *9–10 (D. Mass. Sept. 11, 2020). That is because "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." *Id.* (quoting Fed. R. Civ. P. 57). Here, like in *Maxum*, Harvard seeks a declaratory judgment that Marsh is liable for any coverage of future costs or "obligations" related to the SFFA Action that Harvard's excess insurers would have covered but for Marsh's late notice. Compl. ¶¶ 93–97. This remedy is separate from one available for a breach-of-contract claim seeking past damages already incurred.

### V.   CONCLUSION

For the foregoing reasons, the Court should deny Marsh's partial motion to dismiss Counts One and Two of Harvard's Complaint.

Dated: February 9, 2024

Respectfully submitted,

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE

By its attorneys,

/s/ Robert J. Gilbert
Robert J. Gilbert (BBO# 565466)
Daniel W. Sack (BBO# 699290)
LATHAM & WATKINS LLP
John Hancock Tower, 27th Floor
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
robert.gilbert@lw.com
daniel.sack@lw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF"), and paper copies will be sent on February 9, 2024 to those identified as non-registered participants.

/s/ Robert J. Gilbert
Robert J. Gilbert

21