UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>              Plaintiff,<br><br>      v.<br><br>MARSH USA INC.,<br><br>              Defendant. | Case No. 1:23-cv-13017-ADB |

**MEMORANDUM AND ORDER**

Burroughs, D.J.

Plaintiff President and Fellows of Harvard College ("Harvard") brought this action against Marsh USA Inc.[1] ("Marsh") alleging Breach of Contract ("Count I"); Declaratory Judgment – Breach of Contract ("Count II"); Broker Malpractice ("Count III"); and, Declaratory Judgment – Broker Malpractice ("Count IV"). [ECF No. 9 at 4–228 ("Compl.")]. Presently before the Court is Defendant's motion to dismiss Counts I and II of Plaintiff's complaint. [ECF No. 10]. For the reasons set forth below, the motion to dismiss is GRANTED without prejudice.

**I.  Background**

    **A.  Factual Background[2]**

At all times relevant to this action, Marsh served as an insurance broker and risk management consultant for Harvard. [Compl. ¶ 18]. Marsh and Harvard entered into a series of

---

[1] Marsh USA Inc. is now known as "Marsh USA LLC." [ECF No. 20 at 1]. Marsh USA Inc. and Marsh USA LLC will be referred to collectively here as "Marsh."

[2] On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), the Court accepts as true all well-pleaded facts and draws all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).

written broker agreements, including an agreement effective for the period July 1, 2014, through June 30, 2015 (the "Broker Agreement"). [Id. ¶ 20]. Harvard engaged Marsh to provide various services, including, "Claims-Related Services," which includes timely and adequate notification of claims to the insurers, including Harvard's primary policy ("AIG") and first-layer excess E&O policy ("Zurich"). [Id. ¶¶ 21, 24–25].

On November 17, 2014, Students for Fair Admissions, Inc. ("SFFA") filed a complaint against Harvard in the United States District Court for the District of Massachusetts ("the SFFA Action"). [Compl. ¶¶ 6–37]. On November 18, 2014, Harvard sent an email to Marsh regarding the SSFA Action and requested that Marsh report the matter to AIG. [Id. ¶¶ 6, 49]. Marsh reported the SFFA Action to AIG, who accepted coverage of the claim (the "SFFA Claim"). [Id. ¶ 7]. Unbeknownst to Harvard, Marsh did not report the SFFA Action to Zurich in November 2014. [Id. ¶ 8].

After asking Marsh to report the SFFA Action in November 2014, Harvard and Marsh exchanged numerous communications regarding the SFFA Claim. [Compl. ¶ 54]. Marsh did not give any indication that it had not reported the SFFA action to Zurich, even after receiving new information that the claim would be expensive and long-lasting. [Id. ¶ 56]. In May 2017, after Harvard contacted Marsh to ask if Zurich should be updated on the SFFA Action, Marsh disclosed that it had not yet reported the SFFA Action to Zurich. [Id. ¶¶ 57, 58]. Upon learning this, Harvard demanded Marsh formally report the matter to Zurich and all other excess E&O insurers, which Marsh did on May 23, 2017. [Id. ¶ 59]. Zurich denied coverage for the SFFA claim by letter on October 25, 2017, on the basis that Zurich had received late notice of the claim. [Id. ¶¶ 62–64].

On May 1, 2023, Marsh and Harvard entered into a Tolling Agreement, effective April 28, 2023, tolling "any and all claims [Harvard] may have against Marsh in connection with the SFFA Litigation" for 180 days. [Compl. ¶ 77]. The Tolling Agreement lasted until (but not including) October 25, 2023. [Id. ¶ 78]. The Agreement specified that it did not "have the effect of reviving any Potential Claims that otherwise are barred by any Timing Defenses as of the Effective Date." [Id., Ex. F, 5].[3]

### B. Procedural Background

On October 25, 2023, Harvard filed the instant complaint against Marsh in the Superior Court of the Commonwealth of Massachusetts for Suffolk County. [ECF No. ECF No. 9 at 4–228]. Marsh removed the case to this court on December 8, 2023, [ECF No. 2], and then moved to dismiss the complaint on January 5, 2024. [ECF No. 10]. Harvard opposed the motion to dismiss on February 9, 2024. [ECF No. 16]. Marsh filed a reply brief on February 27, 2024, [ECF No. 20], and Harvard filed a sur-reply on March 8, 2024, [ECF No. 23].

## II. Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead facts and give plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). The complaint must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Dismissal is appropriate if plaintiff's well-pleaded facts do not possess enough heft to show that plaintiff is entitled to relief. Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008).

---

[3] The Court considers the Exhibits attached to the Complaint as incorporated by reference. See Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993).

"Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" Santana-Castro v. Toledo-Dávila, 579 F.3d 109, 113–14 (1st Cir. 2009) (alteration in original) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008)) (internal quotation marks omitted). A dismissal for timeliness is warranted under Rule 12(b)(6) when "the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) (citations omitted).

### III. Discussion

#### A. New York Law Governs the Statute of Limitations

In a diversity action, the Court applies the choice of law rules of the forum state, in this case Massachusetts. Aspect Software, Inc. v. Barnett, 787 F. Supp. 2d 118, 125 (D. Mass. 2011) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Under Massachusetts law, if "the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy" and the chosen state bears a "substantial relationship" to the parties. Hodas v. Morin, 814 N.E.2d 320, 324–25 (Mass. 2004) (first quoting Steranko v. Inforex, Inc., 362 N.E.2d 222 (Mass. App. Ct. 1977)); and then quoting Restatement (Second) of Conflict of Laws § 187(2)(a)); see also Morris v. Watsco, Inc., 433 N.E.2d 886, 888 (Mass. 1982) ("Massachusetts law has recognized, within reason, the right of the parties to a transaction to select the law governing their relationship.").

Specifically, "Massachusetts courts will not honor the parties' choice-of-law if the application of that provision: '[1] would be contrary to a fundamental policy of a state; which has [2] a materially greater interest than the chosen state in the determination of the particular issue;

4

and which ... [3] would be the state of the applicable law in the absence of an effective choice of law by the parties.'" Optos, Inc. v. Topcon Med. Sys., Inc., 777 F. Supp. 2d. 217, 229 (D. Mass. 2011) (quoting Restatement (Second) of Conflict of Laws § 187(2)(b) (1971)).

Regarding statutes of limitations, the Massachusetts Supreme Judicial Court has "departed from the traditional rule of law that characterized limitations statutes as procedural and automatically applied the statute of limitations of the forum State." See Nierman v. Hyatt Corp., 808 N.E.2d 290, 292 (Mass. 2004). For contract actions, Massachusetts has adopted an approach based on the principles summarized in the Restatement (Second) of Conflict of Laws, under which courts look first to whether the parties' contracted choice of governing law is enforceable under § 187(2). See Hodas, 814 N.E.2d at 324–25. If the parties' choice cannot be enforced, or if the parties did not include a contractual choice of law provision at all, courts engage in a functional analysis consistent with § 142.[4] Compare Newburyport Five Cents Sav. Bank v. MacDonald, 718 N.E.2d 404, 407 (Mass. App. Ct. 1999) (enforcing parties' choice of law for statute of limitations purposes), and Hodas, 814 N.E.2d at 324 (same, and performing analysis under § 187(2)), with Shamrock Realty Co. v. O'Brien, 890 N.E.2d 863, 868 (Mass. App. Ct. 2008) (applying functional approach under § 142 when no express choice of law provision governed statute of limitations for contractual guarantee element); see also Shimizu Corp. v. Dow Roofing Sys., LLC, No. CIV.A. 11-30085-DPW, 2013 WL 5513035, at *9 (D. Mass. Sept. 27, 2013) (noting Massachusetts courts apply the functional approach "to determine the

---

[4] Restatement (Second) of Conflict of Laws § 142 reads, in relevant part: "In general, unless the exceptional circumstances of the case make such a result unreasonable: (1) The forum will apply its own statute of limitations barring the claim. (2) The forum will apply its own statute of limitations permitting the claim unless: (a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence."

applicable law [where] the choice of law in the contracts at issue [is] not clear"). [5] Additionally, "Massachusetts courts have held that foreign choice-of-law clauses implicating different statutes of limitations do not violate public policy" per se. Shimizu Corp., 2013 WL 5513035, at *9 (first citing Newburyport Five Cents Sav. Bank, 718 N.E.2d at 407; and then citing Formato v. Protonex Techs. Corp., 2006 WL 4114292, *4 (Mass. Super. Dec. 20, 2006)).

Harvard argues that Massachusetts's functional approach pursuant to the Restatement (Second) of Conflict of Laws § 142 dictates that Massachusetts's statute of limitations law should apply because the case involves a substantial Massachusetts interest and Massachusetts has a more significant relationship to the parties and the incident. [ECF No. 16 at 9–11]. Harvard's position, however, invokes the wrong category of choice-of-law principles under Massachusetts law and disregards the contract's choice of law provision without explanation. Where the contract at issue specifies the governing law, Massachusetts courts will enforce that choice as long as the result is not contrary to public policy, as instructed by the Restatement

---

[5] Although Massachusetts appellate court opinions analyzing the need (or lack thereof) for a functional analysis when the parties have included a choice of law provision in the contract are rare, Massachusetts trial courts have analyzed the interplay of § 187 and § 142, and deferred to the parties' choice of law in the absence of public policy concerns or lack of sufficient relationship to the chosen state. See, e.g., Formato v. Protonex Techs. Corp., 2006 WL 4114292, at *4 (Mass. Super. Ct. Dec. 20, 2006) (enforcing parties' choice of law for statute of limitations purposes and discussing interplay of § 187 and § 142); Cannonball Fund, Ltd. v. Dutchess Cap. Mgmt., LLC, No. SUCV201102307BLS1, 2011 WL 7090718, at *3 (Mass. Super. Ct. Dec. 14, 2011), aff'd in part, vacated in part, 993 N.E.2d 350 (2013) (enforcing parties' choice of law for statute of limitations purposes and citing § 187); Nahill v. Raytheon Co., No. 06-3883-BLS2, 2008 WL 4107330, at *4, n. 5 (Mass. Super. Ct. July 9, 2008) (stating that "[w]here, as here, the case involves a contractual governing-law provision, the Court looks to . . . the relevance of the intent of the parties as evidenced by a governing law provision" and "[w]here there is no contractual governing-law provision, the Supreme Judicial Court has adopted a 'functional approach,' in which a court's focus should be on which State has the most significant relationship to the occurrence and to the parties with respect to the issue of limitations.") (internal quotations omitted). This Court has done the same. See Shimizu Corp. v. Dow Roofing Sys., LLC, No. CIV.A. 11-30085-DPW, 2013 WL 5513035, at *8–10 (D. Mass. Sept. 27, 2013); Beram v. Ceaco, Inc., 219 F. Supp. 3d 274, 278 (D. Mass. 2016).

(Second) of Conflict of Laws § 187(2).[6]  Hodas, 814 N.E.2d at 324.  Harvard has not argued that enforcing the parties' selection of New York law to an insurance brokerage agreement would violate Massachusetts public policy, nor is the Court aware of any case that holds such.  In addition, the transaction bears a substantial relationship to New York law.  Marsh maintains its principal place of business in New York, and the parties chose New York as the governing law for purposes of their Broker Agreement.  [Compl. ¶ 17; Compl., Ex. A, § 9].  Thus, New York has a "substantial" relationship to the parties and the contract such that the choice of law provision is enforceable.  See Steranko, 362 N.E.2d at 260; Newburyport Five Cents Sav. Bank, 718 N.E.2d at 407; see also Formato, 2006 WL 4114292, at *4; Cannonball Fund, 2011 WL 7090718, at *3, n. 15.  Therefore, the Court finds that New York law governs the statute of limitations issue.

---

[6] The majority of the case law Harvard cites in support of its position is inapposite because the contracts at issue did not include a choice of law provision; accordingly, the court in determining the statute of limitations skipped straight to the functional analysis under the Restatement (Second) of Conflict of Law § 142.  In fact, several of Harvard's cited cases are not contract actions at all but instead are based in tort.  See Nierman v. Hyatt Corp., 808 N.E.2d 290 (Mass. 2004); Andersen v. Lopez, 957 N.E.2d 726 (Mass. App. Ct. 2011).  Harvard cites only two cases that involved a contract which included a choice of law provision.  The first is New England Tel. & Tel. Co. v. Gourdeau Constr. Co., 647 N.E.2d 42 (Mass. 1995).  Although the contract at issue in that action contained a choice of law provision, neither party argued that the provision was applicable to statute of limitations issues, and the Court engaged in a functional analysis to determine which law to apply in light of this ambiguity.  See also Shimizu Corp., 2013 WL 5513035, at *9 (distinguishing Gourdeau and other cases where the "choice of law in the contracts at issue was not clear"); Formato, 2006 WL 4114292, at *4 ("The *Gourdeau* case, however, did not involve a contractual choice of law provision such as that in the present case.").  The second is Petrucci v. Esdaile, 175 N.E.3d 1239 (Mass. App. Ct. 2021), which is an unpublished summary decision.  In affirming the trial court's functional analysis, the appellate court discussed the parties' choice of law and the relevant § 187 analysis but then failed to conduct that analysis, skipping instead to the functional analysis of § 142.  Id. at *1–2.

### B. Harvard's Claim are Untimely

New York has a six-year statute of limitations applicable to breach of contract actions. N.Y. C.P.L.R. § 213(2); Chase Sci. Rsch., Inc. v. NIA Grp., Inc., 749 N.E.2d 161, 167 (2001) (holding insurance brokers subject to six-year statute of limitations for contract actions based in malpractice). Under New York law, "a claim for breach of contract accrues when the alleged breach occurs." J.C. Penney Corp. v. Carousel Ctr. Co., L.P., 635 F. Supp. 2d 126, 134 n.5 (N.D.N.Y. 2008). Additionally, New York's statute of limitations "for a declaratory judgment action is based on the underlying substantive claims on which it is premised." Kermanshah v. Kermanshah, 580 F. Supp. 2d 247, 268 (S.D.N.Y. 2008).

Because they are breach of contract actions, Counts I and II are subject to a six-year statute of limitations, and the causes of action began to accrue when Marsh first allegedly breached the Broker Agreement. Harvard alleges that Marsh breached the Broker Agreement when it failed to timely notify Zurich of the SFFA Action, which, under the Zurich policy, would have been within 90 days after the end of the policy (or, January 30, 2016). [Compl. ¶¶ 83–87; Compl., Ex. E, 2]. Therefore, accepting Harvard's well-pleaded allegations as true for the purposes of this motion to dismiss, Harvard alleges that Marsh first breached the Broker Agreement no later than January 30, 2016. Pursuant to New York's six-year statute of limitations, Harvard's claims would typically have been rendered untimely on January 30, 2022. However, on March 20, 2020, as a result of the COVID-19 pandemic, the Governor of New York signed an executive order tolling all claims until April 19, 2020, and this was later extended through November 3, 2020, for a total tolling period of 228 days. Murphy v. Harris, 210 A.D.3d 410, 411 (N.Y. App. Div. 2022). Accounting for New York's COVID-19 tolling period of 228 days, the applicable statute of limitations for Counts I and II ran out on September 15, 2022.

This was prior to the effective date of the Tolling Agreement, meaning that the agreement has no bearing on the timeliness of this claim. Harvard's breach of contract claims, which it filed on October 25, 2023, are therefore untimely.

### IV. Conclusion

Accordingly, Marsh's motion to dismiss Counts I and II of Harvard's Complaint, [ECF No. 10], is <u>GRANTED</u> without prejudice.

**SO ORDERED.**

August 15, 2024                                     /s/ *Allison D. Burroughs*
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE