# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,

        Plaintiff,

v.

MARSH USA INC.,

        Defendants.

Civil Action No.: 1:23-cv-13017-ADB

## MARSH USA INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED INTERROGATORY RESPONSES & LATE-DISCLOSED EXPERT REPORTS

Jonathan I. Handler, BBO #561475
Denise M. Paarlberg, BBO #713970
Victoria R. Whalen, BBO #712540
DAY PITNEY LLP
One Federal Street
Boston, MA 02110
(617) 345-4600
(617) 345-4776
jhandler@daypitney.com
dpaarlberg@daypitney.com
twhalen@daypitney.com

Date:   February 13, 2026

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................................. 2

ARGUMENT ..................................................................................................................... 6

    I.      Harvard's untimely Second Amended Responses and expert reports should be stricken. ................................................................................................................... 6

          A.     Harvard cannot reasonably argue the late amendments in its Second Amended Responses are justified. ................................................................. 7

          B.     Harvard's late disclosures are harmful to Marsh as a matter of law. .............. 11

          C.     Striking the Second Amended Responses is the appropriate remedy. ............ 12

          D.     The Court should strike Harvard's late expert reports, or at minimum, the sections of its expert reports that rely upon the Second Amended Responses. ........................................................................................................ 15

          E.     If the Court does not strike Harvard's late disclosures, significant additional discovery and a major modification of the existing schedule is required to minimize the prejudice to Marsh's defense ............................. 17

          F.     If the Court does not strike Harvard's late disclosures, Marsh will also seek leave of Court to amend its Answer and move for judgment based on a statute of limitations defense. ................................................................. 19

CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allscripts Healthcare, LLC v. DR/Decision Res., LLC*,
    521 F. Supp. 3d 112 (D. Mass. 2021) .................................................................................13, 15

*Apple, Inc. v. Samsung Elecs. Co.*,
    No. 11-CV-01846, 2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) ..........................................17

*AVX Corp. v. Cabot Corp.*,
    251 F.R.D. 70 (D. Mass. 2008)..................................................................................7, 8, 13, 16

*BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*,
    No. 24-1942, 2026 WL 266238 (1st Cir. Feb. 2, 2026).........................................................19

*C.R. Bard, Inc. v. Med. Components, Inc.*,
    No. 2:17-CV-00754, 2025 WL 102218 (D. Utah Jan. 15, 2025) ...........................................17

*Cavanagh v. Taranto*,
    95 F. Supp. 3d 220 (D. Mass. 2015) ...........................................................................8, 12, 16

*Charter Env't, Inc. v. Shaw Env't, Inc.*,
    No. 07-CV-11609, 2009 WL 2982772 (D. Mass. Sept. 14, 2009) ....................................8, 11

*Fractus, S.A. v. ZTE Corp.*,
    No. 3:18-CV-02838, 2019 WL 5697205 (N.D. Tex. Nov. 4, 2019) ......................................17

*Gagnon v. Teledyne Princeton, Inc.*,
    437 F.3d 188 (1st Cir. 2006)...................................................................................................8, 13

*Harriman v. Hancock Cnty.*,
    627 F.3d 22 (1st Cir. 2010).....................................................................................................8, 13

*Hudson-RPM Distribs., LLC v. Bowditch & Dewey, LLP*,
    No. 4:19-CV-40095, 2022 WL 22902243 (D. Mass. Mar. 29, 2022) .......6, 7, 8, 11, 12, 13, 14

*Mass. v. Exxon Mobil Corp.*,
    462 F. Supp. 3d 31 (D. Mass. 2020) .......................................................................................11

*O'Connell v. Hyatt Hotels of P.R.*,
    357 F.3d 152 (1st Cir. 2004)....................................................................................................13

*Oracle USA, Inc. v. SAP AG*,
    264 F.R.D. 541 (N.D. Cal. 2009)............................................................................................10

*Paolino v. JF Realty, LLC*,
830 F.3d 8 (1st Cir. 2016)...............................................................................................17

*Providence Piers, LLC v. SMM New England, Inc.*,
No. 12-CV-00532, 2015 WL 9699936 (D.R.I. Oct. 1, 2015), *report and recommendation adopted*, 2016 WL 126742 (D.R.I. Jan. 11, 2016)...........................................................14, 15

*Sheek v. Asia Badger, Inc.*,
235 F.3d 687 (1st Cir. 2000)............................................................................................16

*Thibeault v. Square D Co.*,
960 F.2d 239 (1st Cir. 1992)............................................................................2, 13, 16, 18

**Rules**

Fed. R. Civ. P. 26............................................................................................................6

Fed. R. Civ. P. 37....................................................................................................7, 12, 13

Marsh respectfully submits this emergency motion seeking the Court's intervention to bar Harvard's eleventh-hour attempt to fundamentally re-tool its case. Harvard's expert disclosures were due on January 30, 2026. None were made. Instead, and without substantial justification under Rule 37(c)(1), on February 2, 2026, six weeks after fact discovery cut-off, Harvard served its *second* amended interrogatory responses that fundamentally change its calculation of damages by relying on a theory Harvard *explicitly disclaimed* seven months before in its first amended interrogatory responses and increasing Harvard's purported damages ███████████████ ██████ Additionally, Harvard substantively modified the basis of its negligence claims relying on information Harvard has possessed for years. Thereafter, on February 9, 2026, Harvard belatedly served expert reports relying on these game-changing responses. The law on such practices is clear, and Marsh now seeks emergency relief to prevent Harvard from pursuing this last-minute gambit.

Harvard's late disclosures significantly and materially prejudice Marsh's defense by foreclosing Marsh from pursuing discovery on issues Harvard previously described in verified interrogatory responses as "not necessary." That prejudice can only be remedied by striking Harvard's Second Amended Responses and the corresponding portions of Harvard's late expert reports (if the Court does not strike the untimely expert reports altogether). Otherwise, basic principles of fairness would require a significant extension of the existing schedule to allow Marsh to pursue the discovery it would have undertaken had Harvard's disclosures been timely. This includes seeking additional discovery from Harvard and substantial third-party discovery. Marsh would also need to seek leave to amend its Answer to include a statute of limitations defense, as Harvard's new theory of damages renders its remaining causes of action time-barred.

"Rule 26 promotes fairness both in the discovery process and at trial. For Rule 26 to play its proper part in this salutary scheme, discovery must not be allowed to degenerate into a game of

cat and mouse." *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992). Harvard has done precisely that, however, by forcing Marsh to contend with four materially different damages claims throughout this matter even though the underlying events occurred a decade ago. The Rules of Civil Procedure and this Court's practice of strictly enforcing its scheduling orders are designed to prevent parties from playing just this type of "shell game" and avoid trial by ambush. The key to this regime is ensuring the parties make timely disclosures of their substantive claims, damages, and defenses and do not sit on essential information until the eleventh hour. Harvard's litigation strategy undermines that fundamental principle.

Accordingly, the Court should strike Harvard's Second Amended Responses entirely and those portions of Harvard's late expert reports that rely upon them (to the extent the expert reports are not struck altogether) so that the parties may proceed in accordance with the Court's current schedule. Alternatively, Marsh requests the Court reopen discovery and extend the current schedule to allow Marsh a reasonable amount of time to initiate discovery on these previously undisclosed theories and permit Marsh to pursue a newly viable statute of limitations defense.

## FACTUAL BACKGROUND

On October 25, 2023, Harvard sued Marsh in Massachusetts state court alleging that Marsh's professional negligence was the reason Harvard's notice of the SFFA Action to its excess insurers was late. Harvard asserted a professional negligence claim, breach of contract claim, and declaratory judgment claims associated with each. On December 8, 2023, Marsh removed the case to federal court and filed a partial motion to dismiss on January 5, 2024, in which Marsh sought to dismiss Harvard's breach of contract claim and associated declaratory judgment claim based on

Harvard's violation of the six-year statute of limitations under New York law.[1] This Court found that because Harvard alleged that Marsh first breached the broker agreement on January 30, 2016 (the claims reporting deadline under the Zurich policy at issue), Harvard's contract claims were time barred. Accordingly, the Court dismissed Harvard's contract claims, leaving only Harvard's claim of professional negligence and the associated declaratory judgment claim.

Harvard's damages theory and calculation have been a moving target since it filed its complaint more than two years ago, despite the fact the key underlying events occurred between 2014 and 2017. For example, in its _October 25, 2023_ Complaint, Harvard stated that it was seeking "excess of $27.5 million" in damages resulting from Zurich's coverage denial, and the costs of suing Zurich for coverage.[2] Then, in Harvard's initial disclosures and first set of interrogatory responses (the latter dated _April 4, 2025_), Harvard asserted ███████████████████ ████████████████████████████████████████████ Then, on _July 11, 2025_, in an amended set of interrogatory responses, Harvard ████████ ████████████████████████████████████████████ ████████████████████[4] Five months later, on _December 11, 2025_, Harvard employee Sonya Ross testified that Harvard ████████████████████████████ ██████████████████████████, and on _January 12, 2026_, Ms. Ross again stated that Harvard is seeking ████████████████████████████

---

[1] The Broker Agreement between Marsh and Harvard provides that New York law governs the agreement.
[2] Harvard's Prayer for Relief is attached as Exhibit 1.
[3] The relevant excerpt from Harvard's Initial Disclosures is attached as Exhibit 2, and the relevant excerpt from Harvard's April 4, 2025 Interrogatory Responses is attached as Exhibit 3.
[4] Harvard's July 11, 2025 Supplemental Interrogatory Responses are attached as Exhibit 4.

█████████████████████████████████[5] Most recently, on _February 2, 2026_, Harvard's

Second Amended Responses identify the amount sought ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████Damages").[6]

As noted above, Harvard served its interrogatory responses and first amended responses on April 4, 2025 and July 11, 2025 respectively, the latter of which only amended a portion of the original responses and disavowed any attempt to recover ██████████Damages. Ms. Ross, who later gave deposition testimony in both her individual capacity and as Harvard's corporate designee, signed both interrogatory responses. However, in her December 11, 2025 deposition, she contradicted her own sworn responses and testified ██████████████████████

███████████████████████████████████████████████

██████████████████████████(Exhibit 5, 96:2-98:5.) She also █████████████

███████████████████████████████████████████████

██████████(_Id._, 98:6-14.) When asked about Harvard's purported damages on January 12, 2026 (testifying in her corporate capacity), Ms. Ross stated that Harvard ████████████████

███████████████████████████████████████████████████████

██████Once Ms. Ross revealed that Harvard █████████████████████████████

---

[5] The relevant excerpt from Sonya Ross's December 11, 2025 testimony is attached as Exhibit 5, and relevant excerpts from Ms. Ross's January 12, 2026 testimony are attached as Exhibit 6.
[6] Harvard's February 2, 2026 Second Amended and Supplemental Interrogatory Responses are attached as Exhibit 7 (the "Second Amended Responses").

███████████████████████████████████████████████████████████████

██████████████████████████ Marsh had no choice but to suspend questioning on damages.[7]

Furthermore, Harvard never revealed that its Second Amended Responses would reflect significant modifications to topics beyond damages. Ms. Ross testified only that █████████ ████████████████████████████████████████████████████ Marsh followed up the next day asking Harvard to confirm if it intended to amend its damages interrogatories but received no response.[8] Three days later, Harvard confirmed at the conclusion of day one of Marsh's 30(b)(6) deposition that Harvard intended to serve the supplemental interrogatories referenced by Ms. Ross. When no such interrogatory responses appeared, Marsh again asked Harvard on January 21, 2026 to "please confirm when Harvard will serve its amended interrogatory responses," but once more received no response.[9] Finally, on February 2, 2026, Harvard served the Second Amended Responses, verified a third time by Ms. Ross, in which Harvard not only radically modified its theory and calculation of damages but also asserts several new theories in support of its negligence claims. The latter includes ███████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ All of these arguments are new and yet are based upon documents that have been in Harvard's possession for a decade, long before this case was initiated.

Harvard also made no mention of amending its interrogatory responses at the December 16, 2025 status conference with the Court. Harvard informed the Court "in the interest of

---

[7] Marsh cannot complete the Rule 30(b)(6) deposition of Harvard until the Court decides whether Harvard's new theories of damages and liability are permitted to stand. Hence, Marsh is seeking resolution of this issue on an emergency basis.

[8] A true and correct copy of these emails are attached as Exhibit 8.

[9] A true and correct copy of this email is attached as Exhibit 9.

transparency" that two depositions needed to be completed in "early January."[10] Harvard also disclosed that it planned to present a "damages expert" but said nothing about making a drastic change to its theory and resulting calculation of damages.

Based on Harvard's late disclosures, Marsh requested a meet and confer conference pursuant to Local Rule 7.1 and Rule 37.1(a)(1) to discuss the issue, which took place on February 10, 2025. Harvard acknowledged that the Second Amended Responses were late but contended that they were timely supplementations under Rule 26(e). Harvard provided no legitimate reason for failing to make a timely disclosure of its new theories on damages and negligence, especially when Harvard largely relied on information it possessed for months or even years. Harvard's view is that the late Second Amended Responses are not prejudicial to Marsh. Marsh disagrees.

## ARGUMENT

### I.    Harvard's untimely Second Amended Responses and expert reports should be stricken.

"Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), a party must, without awaiting a discovery request, provide to the other parties a computation of each category of damages claimed by the disclosing party. The disclosing party must also make available the documents or other evidentiary material on which each computation is based, including materials bearing on the nature and extent of injuries suffered." *Hudson-RPM Distribs., LLC v. Bowditch & Dewey, LLP*, No. 4:19-CV-40095, 2022 WL 22902243, at *2 (D. Mass. Mar. 29, 2022) (citation modified). Rule 26(e) requires parties to update Rule 26(a) and interrogatory disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." *Id.* "The required Rule 26(e) supplementation 'should be made at appropriate intervals *during the discovery*

---

[10] A true and correct copy of the transcript from the Parties' December 16, 2025 Status Conference is attached as Exhibit 10.

*period*.'" *AVX Corp. v. Cabot Corp.*, 251 F.R.D. 70, 76 (D. Mass. 2008) (quoting Fed. R. Civ. P. 26(e) advisory committee note to 1993 amendments).

"If there is a violation of Rule 26(a)(1)(A) and Rule 26(e) the Court turns to the issue of what sanction to impose under Rule 37(c)(1)." *Hudson-RPM Distribs.*, 2022 WL 22902243, at *3 (citation modified). Under Rule 37(c)(1), "if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* (citation modified). In particular, "a party who breaches the duty to disclose a computation of damages under Rule 26(a)(1)(A)(iii) and/or the duty to supplement an interrogatory answer *may not use any undisclosed material as evidence unless it proves that its failure to disclose was harmless or substantially justified*." *AVX Corp.*, 251 F.R.D. at 77 (emphasis added) (citation modified). It is Harvard's burden to show either a substantial justification for its delay or that the delayed disclosure was harmless. *AVX Corp.*, 251 F.R.D. at 78. Harvard cannot do either.

### A. Harvard cannot reasonably argue the late amendments in its Second Amended Responses are justified.

"A substantial justification is one that could satisfy a reasonable person." *Id.* (citation modified) (quoting *Pan Am. Grain Mfg. Co., Inc. v. P.R. Ports Auth.*, 295 F.3d 108, 117 (1st Cir.2002)). Harvard cannot meet this standard.[11]

In general, Massachusetts federal courts will only find substantial justification in the rare instances when late disclosure resulted from factors beyond a party's reasonable control. For example, in *AVX Corp.*, the plaintiff supplemented its answer to a damages interrogatory after fact

---

[11] Harvard served the Second Amended Responses without explanation, simply saying "Please find attached Harvard's Second Amended and Supplemental Responses & Objections to Marsh's First Set of Interrogatories. This document is designated 'ATTORNEYS' EYES ONLY' pursuant to the protective order entered in this matter and should be treated accordingly."

and expert discovery closed, "leaving [the defendant] without an opportunity to explore the basis for the calculations or to accurately gauge the monetary exposure it faced in this action and, as a result, the amount it needed to expend to defend against the accusations." 251 F.R.D. at 77. The court rejected plaintiff's justification for the untimeliness of its damages disclosure, *i.e.*, "confusion regarding the date for the submission of expert reports," finding it "not well taken." *Id.* at 78.[12]

Similarly, in *Cavanagh v. Taranto*, 95 F. Supp. 3d 220 (D. Mass. 2015), defendants moved to strike plaintiff's expert disclosures for failure to comply with Rule 26(a). Plaintiff waited until five months after its expert disclosures were due to submit a full expert report. *Id.* at 227-28. This was too late. The court rejected plaintiff's arguments that "his good faith effort to comply with the rule should permit the full expert report to stand," that his "submission was justifiably delayed by his efforts to locate and depose [a witness,]", or that he "believed—wrongly—that his [earlier partial submission] complied with the rule." *Id.* at 229. Unpersuaded, the court found plaintiff's late disclosure "was plainly unjustified and unreasonable." *Id.* at 229-30.[13]

---

[12] However, the court did find substantial justification for a portion of the plaintiff's late damages calculations where defendant "did not produce the information relative to certain sales data and pricing" until after close of discovery and plaintiff did not otherwise have access to this information. *Id.* Such circumstances are not present in this case, when Harvard has possessed the documentation underlying its damages calculations and theories for years.

[13] *See also Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 197 (1st Cir. 2006) (finding "a miscalculated strategy topped by an inexcusable failure to observe a long-established deadline" is not a substantial justification for late disclosure); *Harriman v. Hancock Cnty.*, 627 F.3d 22, 30 (1st Cir. 2010) (finding no substantial justification for late disclosure when the "record shows beyond hope of contradiction that [plaintiff] knew very early on" about witnesses who could help his case); *Hudson-RPM Distribs.*, 2022 WL 22902243, at *4 (finding no justification where party failed to provide one but instead attempted to minimize the value of its supplemental disclosure); *but see Charter Env't, Inc. v. Shaw Env't, Inc.*, No. 07-CV-11609, 2009 WL 2982772, at *15 (D. Mass. Sept. 14, 2009) (finding justification where defendants' final damages figure depended on the ultimate cost of the replacement subcontractor's work, which had not yet been completed, such that defendants "could not put forth an exact calculation or number without knowing the final cost of the replacement work").

Harvard's late disclosure here, based on information in its possession for years yet made after the close of fact discovery, should be stricken because it severely prejudices Marsh's defense. Based on Harvard's April 4, 2025 and July 11, 2025 verified disclosures, the parties exchanged numerous written discovery requests, responses, and document productions and substantially completed all depositions. In particular, in its July 11, 2025 interrogatories, Harvard ███████████

████████████████████████████████████████████████████████████████

██████████████████████ Harvard explicitly stated ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ (Emphasis added.)
Marsh proceeded with its defense strategy based upon this representation.

Now, in its Second Amended Responses, Harvard reverses course and declares ████████

████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ This is more than a simple late disclosure—it is a *total reversal* of Harvard's prior affirmative position seventh months ago ████

██████████████ offered without explanation for its flip-flip or why it is doing so now when the underlying facts have been known for nearly ten years.[14] If allowed to stand, Harvard's ploy would foreclose Marsh from obtaining discovery about this position.

──────────────────────

[14] Harvard has not articulated how the ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

In addition, Harvard has amended its responses to present new theories of its case based on documents that have long been in Harvard's possession. For example, ██████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

██████████████████ Harvard is only now presenting a theory regarding this communication to support its negligence claim, despite it being thirteen years old.

Ultimately, Harvard's Second Amended Responses rely on information in its possession well before the close of discovery (and in most instances, before this case was even filed), providing prime grounds for preclusion. *E.g., Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 548 (N.D. Cal. 2009) (granting defendants' motion to preclude late-disclosed damages evidence, finding "the record … shows that Plaintiffs … possessed the necessary information [for their damages calculation] before filing the complaint, and well before they served their initial

██████████████████████ or (2) the legal basis on which Harvard could seek a ████████████
████████████████

---

[15] *See* MMC-00039828.
[16] *See* HARVARD-00002670, HARVARD-00002665, and MMC-00007275.

disclosures and first responses to discovery requests"). Harvard cannot amend its interrogatory responses after close of discovery simply because it overlooked its own documents before suing Marsh or changed its mind (again) about its claimed damages. A plaintiff defines the scope of its case, and a defendant then builds its defense based—and is entitled to rely—upon that scope. *Mass. v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 39 (D. Mass. 2020) ("the plaintiff the master of the claim") (citation modified). Marsh has defended the case for years in reliance upon Harvard's representations of its substantive claims and damages calculation, and only now, at the eleventh hour, Harvard is changing the playing field. Harvard has had multiple opportunities to raise this theory, including at the pleading stage, during Rule 26 Disclosures, and repeated verified interrogatory responses.

Harvard's attempt to justify its late disclosures by pointing to depositions that occurred in December 2025 do not withstand scrutiny. A majority of the amended portions of the Second Amended Responses cite documents that Harvard has possessed for years or received, at the latest, months ago during fact discovery. These are not timely supplemental disclosures under Rule 26(e)—they are unjustified eleventh-hour assertions that fundamentally change the scope of the case.

**B. Harvard's late disclosures are harmful to Marsh as a matter of law.**

By submitting amended interrogatory responses well after the close of fact discovery, Harvard has deprived Marsh of any opportunity to investigate its newly disclosed claims, which is anything but "harmless." "The harmlessness evaluation can be thought of as a 'balancing of fairness, burden, and case management needs.'" *Hudson-RPM Distribs.*, 2022 WL 22902243, at *3 (citation modified) (quoting *Gagnon*, 437 F.3d at 197). "The First Circuit deems surprise and prejudice to be 'important integers in this calculation' of harmlessness." *Charter Env't, Inc.*, 2009 WL 2982772, at *15 (quoting *Gagnon*, 437 F.3d at 197-98). "Delay is not harmless when the

ultimate disclosure occurs after the close of discovery, leaving the defendant without the means to explore and challenge the basis of the late-disclosed evidence." *Cavanagh*, 95 F. Supp. 3d at 230 (citation modified).

First, it is undisputed that Harvard's Second Amended Responses were served well after the fact discovery deadline on December 19, 2025, making them harmful as a matter of law, *id.*, and the Court can end its harmlessness inquiry here. Second, Harvard now seeks to recover

████████████████████████████████████████

Third, Harvard not only amended its theory and calculation of damages but went far beyond that and presented multiple new theories of Marsh's alleged negligence based on information long available to it. As a result, Marsh is severely prejudiced by having been denied the opportunity to pursue the new theories set forth in the Second Amended Responses. Harvard claims that Marsh should be able to complete any additional discovery required due to the Second Amended Responses within the current schedule set by the Court. As discussed below, Marsh's harm cannot be cured by forcing it to pursue significant, essential new discovery under the current schedule, especially as the parties are well into the expert discovery period and dispositive motions are due May 1, 2026. (ECF No. 44.)

**C. Striking the Second Amended Responses is the appropriate remedy.**

Under Rule 37(c)(1), the "baseline rule is that the required sanction in the ordinary case is mandatory preclusion." *Hudson-RPM Distribs.*, 2022 WL 22902243, at *3 (quoting *Santiago-Diaz v. Laboratorio Clinico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006)). "Pertinent factors to consider in assessing the appropriate sanction include 'the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and

the opponent's ability to overcome its adverse effects.'" *AVX Corp.*, 251 F.R.D. at 79 (quoting

*Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir.2003)). Courts also

> consult an array of factors when reviewing preclusion decisions. They include the sanctioned party's justification for the late disclosure; the opponent-party's ability to overcome its adverse effects (i.e., harmlessness); the history of the litigation; the late disclosure's impact on the district court's docket; and the sanctioned party's need for the precluded evidence.

*Harriman*, 627 F.3d at 30.

At the parties' requests, the Court has already extended the fact discovery deadline four

times since the litigation began in 2023. (*See* ECF Nos. 36, 41, 44, 48). Harvard has thus had more

than ample opportunity to amend its discovery responses in a timely manner (never mind that

Harvard has had years to determine its theory and calculation on claimed damages). Accordingly,

striking the Second Amended Responses entirely is the proper remedy. "[A]s the First Circuit

made clear in *Gagnon*, case management deadlines are meant to serve as cutoffs with teeth,

particularly in the context of Rule 37(c)(1)." *Hudson-RPM Distribs.*, 2022 WL 22902243, at *3

(D. Mass. Mar. 29, 2022) (citing *Gagnon*, 437 F.3d at 191).

Case management is an "area where a trial judge has the remorseless responsibility,

evenhandedly and efficiently, to govern, monitor, and police the progress of an endless line of

cases through the court." *Gagnon*, 437 F.3d at 191. Rule 37(c)(1) "clearly contemplates stricter

adherence to discovery requirements, and harsher sanctions for breaches." *Id.* (citation modified).

The First Circuit has repeatedly emphasized that "litigants cannot be permitted to treat a scheduling

order as a frivolous piece of paper idly entered, which can be cavalierly disregarded without peril."

*O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004) (citation modified); *see, e.g.,*

*Thibault*, 960 F.2d at 247 (affirming district court's preclusion of late-disclosed expert

testimony); *Allscripts Healthcare, LLC v. DR/Decision Res., LLC*, 521 F. Supp. 3d 112, 125-26

(D. Mass. 2021) (granting summary judgment for plaintiff on counter-claim because defendant

-13-

failed to provide timely evidence of damages); *Providence Piers, LLC v. SMM New England, Inc.*, No. 12-CV-00532, 2015 WL 9699936, at *12-13 (D.R.I. Oct. 1, 2015) (striking fact witness testimony and expert report based on untimely disclosure), *report and recommendation adopted*, 2016 WL 126742 (D.R.I. Jan. 11, 2016).

Federal courts generally favor striking late disclosures over reopening discovery. For example, in *Hudson-RPM*, plaintiff served an amended interrogatory response and supporting materials increasing its damages calculation over three months after close of fact discovery. *Hudson-RPM Distribs.*, 2022 WL 22902243, at *1. Defendants moved to strike, arguing they would have pursued discovery on this component of plaintiff's damages but were unable to do so because of the late disclosure. *Id.* at *3. The court rejected plaintiff's arguments that defendants could have calculated the damages on their own or that "such a small amount" does not require significant additional discovery. *Id.* at *4. The court found that "[w]hen a party does not disclose required information, its counterparty cannot be 'reasonably expected' to pursue discovery regarding that information, let alone deduce it on its own." *Id.* The court struck the late damages disclosure, holding that "[d]iscovery is intended to avoid trial by ambush, and Defendants are not expected to calculate or discover [plaintiff's] damages categories on their own." *Id* at *7.

Similarly, in *Providence Piers*, defendant moved to strike the testimony of a late-disclosed fact witness and a late expert report. With respect to the new fact witness, plaintiff argued that its disclosure of this witness "is simply a permissible supplementation pursuant to Fed. R. Civ. P. 26(e)." 2015 WL 9699936, at *9. However, "when read in light of the reality that [the witness] was in communication with [the defendant] … from early in the litigation, yet it delayed the engagement and the disclosure until every discovery ship had sailed, the assertion that the disclosure was timely rings hollow." *Id.* With respect to the expert report, plaintiff originally

disclosed that the expert would opine on two valuations of the property at issue. However, the expert only produced a timely report for one valuation and did not produce a report for the second until nearly nine months after the disclosure deadline. Plaintiff argued the late disclosure was justified because it was "pointless to do a timely expert disclosure" because the parties needed to conduct a second valuation just before trial anyway. 2015 WL 9699936, at *12. The court was not convinced, emphasizing that the expert discovery deadline had passed, the expert had already been deposed on the timely report, and the defendant had already prepared its rebuttal reports on both valuations. The court found "the manipulation of a claimed supplementation so that it does not surface until after all deadlines are past cannot be excused by Fed. R. Civ. P. 26(e)." *Id.*

The same is true here. Not only has Harvard possessed the documents necessary to calculate its claimed damages for years, but it has also possessed for years a majority of the documents cited to support its new theories of Marsh's negligence. As with the plaintiffs in *Allscripts* and *Providence Piers*, Harvard had many opportunities to provide timely supplemental interrogatory responses but made the tactical decision not to do so. It must face the consequences of its litigation choice.

### D. The Court should strike Harvard's late expert reports, or at minimum, the sections of its expert reports that rely upon the Second Amended Responses.

In addition to striking Harvard's Second Amended Responses, the Court should strike Harvard's tardy expert reports. Harvard served its expert reports on February 9, 2026—ten days after the January 30, 2026 deadline set by the Court. Harvard proposed alternative expert deadlines in early January, and Marsh countered two days later. But despite representations that it would respond to Marsh's proposal, Harvard never did so. Instead, Harvard unilaterally granted itself a 10-day extension, and when asked for justification, it attempted to argue the parties had agreed on extensions for expert discovery deadlines. They had not. Harvard's tardiness alone provides

grounds for the Court to strike Harvard's expert reports in their entirety. *See Cavanagh*, 95 F. Supp. 3d at 230 (finding that expert report may be excluded when lateness is unjustified and harms or prejudices other party). While this is a severe sanction, it is appropriate under the circumstances. However, in the event the Court is inclined to impose an alternative penalty, it has ample authority to strike the portions of Harvard's expert reports that rely upon the Second Amended Responses—in particular, Harvard's claim for ███████ Damages and its new theories of negligence liability.

> Courts have broad discretion in determining the appropriate sanction for failure to disclose:

> [T]he impetus behind a court's deployment of sanctions is not merely to punish a party for untoward acts or omissions; it is, equally, to deter other litigants from disregarding the imperatives of the Civil Rules ... in the Rule 26(e) context, preclusion can be imposed in response to a party's subversion of the trial process, even if the responsible party was guilty of laxity rather than bad faith.

*Thibeault*, 960 F.2d at 245.

> When faced with a discovery violation, the district court possesses wide latitude in formulating the appropriate sanction. Under the Federal Rules of Civil Procedure, a party that fails to disclose information under Rule 26(e)(1) "shall not be permitted to use as evidence any witness or information not so disclosed."

*Sheek v. Asia Badger, Inc.*, 235 F.3d 687, 694 (1st Cir. 2000) (citation modified) (quoting Fed. R. Civ. P. 37(c)). In *Asia Badger*, the district court excluded portions of the defendant's expert testimony that relied on an untimely supplementation to his original medical report that included changes in his medical opinion. The First Circuit found that the district court could have excluded the expert's testimony altogether, saying it was "a sanction well within the district court's scope of discretion," but the district court decided to strike only those portions that reflected the untimely disclosed changes in his medical opinion. *Id.*; *accord AVX Corp.*, 251 F.R.D. at 80 (striking only the portion of supplemental answer that relies on unjustifiably late interrogatory responses);

-16-

*Paolino v. JF Realty, LLC*, 830 F.3d 8, 14 (1st Cir. 2016) (affirming exclusion of expert's untimely portion of his report).[17]

The same is true here. The Court can strike Harvard's expert reports in their entirety because they were late and because they rely on impermissibly late interrogatory responses, but at a minimum, the Court should strike the portions of those reports that rely on Harvard's Second Amended Responses because they are an unjustified and prejudicial late disclosure.

**E. If the Court does not strike Harvard's late disclosures, significant additional discovery and a major modification of the existing schedule is required to minimize the prejudice to Marsh's defense.**

In the event the Court permits Harvard to rely on its unexcused failure to timely respond to written discovery, Marsh should be allowed to conduct the additional discovery—at Harvard's expense—it would have pursued had Harvard made timely disclosure of its new substantive arguments and damages theories and calculations. Among the discovery that Marsh anticipates would be required by the Second Amended Responses are:

---

[17] *Accord, e.g., Fractus, S.A. v. ZTE Corp.*, No. 3:18-CV-02838, 2019 WL 5697205, at *2 (N.D. Tex. Nov. 4, 2019) (excluding sections of expert reports that introduced evidence that defendant failed to identify during fact discovery); *C.R. Bard, Inc. v. Med. Components, Inc.*, No. 2:17-CV-00754, 2025 WL 102218, at *5 (D. Utah Jan. 15, 2025) (striking portions of expert reports that reference two non-infringing alternative products that were never disclosed in defendants'' interrogatories, finding that "[w]hile no trial date has been set, reopening discovery, depositions, or expert reports would delay the progression of the case and the ultimate trial"); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2012 WL 3155574, at *4 (N.D. Cal. Aug. 2, 2012) (finding judge's exclusions of "portions of expert reports based on evidence and theories not disclosed in discovery" was not clearly erroneous).



To accommodate the additional discovery above would require a substantial adjustment to the existing schedule, which contravenes the fundamental principles of judicial efficiency by extending the current schedule (for a fifth time) by months.

> [A] continuance is often ineffectual as a sanction and unfair to both the court and the opposing party. If continuances were granted as a matter of course for violations of Rule 26(e), the rule could always be disregarded with impunity. Courts could not set their calendars and conscientious litigants could not count on the stability of trial dates previously established.

*Thibeault*, 960 F.2d at 246 (citation modified). For this reason, the Court should strike Harvard's late Second Amended Responses and expert reports, or at minimum the sections of Harvard's



expert reports that rely upon them, and allow the case to proceed to resolution within the existing schedule.

**F.  If the Court does not strike Harvard's late disclosures, Marsh will also seek leave of Court to amend its Answer and move for judgment based on a statute of limitations defense.**

If the amended damages interrogatory responses are permitted to stand, Marsh also would need to amend its Answer to include an affirmative defense based on the statute of limitations because the new category of damages Harvard seeks renders its negligence claims untimely as a matter of law.

As the Court will recall, Marsh successfully moved to dismiss Harvard's two breach of contract claims on statute of limitations grounds. Marsh had no good faith basis at that time (or when it later answered the remaining allegations in the Complaint) to assert a statute of limitations defense to Harvard's negligence claims. That is no longer true, however, if Harvard is permitted to claim ███████████████████████████████████████████████████████████
███████████████████████████████████████████ Indeed, based on that theory of recovery, Harvard's negligence claims would almost certainly be time-barred.

Under Massachusetts law, a negligence claim accrues when a plaintiff has "sufficient information to recognize [it has]" suffered appreciable harm "that is 'causally connected to' the defendant's conduct." *BlueRadios, Inc. v. Hamilton, Brook, Smith & Reynolds, P.C.*, No. 24-1942, 2026 WL 266238, at *8 (1st Cir. Feb. 2, 2026) (quoting *Int'l Mobile Corp. v. Curron & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 218 (1990)). Here, ███████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████ As to the former, Harvard has asserted repeatedly that this happened in May 2017. (Complaint, ¶¶ 57-60; Exhibit 3, p. 7.) ███████████████████████████████████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

████████████    If so, then Harvard's negligence claims would be time barred unless they were filed within three years (the statutory limitation period in Massachusetts) plus 106 days (the COVID tolling period mandated by Massachusetts) of that date, *i.e.*, by January 26, 2022. Harvard did not file its Complaint until *October 29, 2023*, well after that date. Accordingly, under its new damages theory, Harvard's negligence claims are ripe for dismissal, and if the Second Amended Responses are not stricken, Marsh should be granted immediate leave to amend its Answer to add the affirmative defense necessary to pursue dismissal on that basis.[23]

## CONCLUSION

For the foregoing reasons, Marsh respectfully requests that this Court strike Harvard's February 2, 2026 Second Amended and Supplemental Interrogatory Responses and Harvard's Late Expert Reports, or at a minimum the sections of Harvard's expert reports that rely upon them. In the alternative, Marsh requests an extension of the current schedule to allow Marsh to conduct discovery sufficient to address Harvard's eleventh-hour assertions and changes of direction. Marsh also seeks the fees and costs associated with bringing this Motion pursuant to Rule 37(c)(1)(A).

---

[23] When considering the prejudicial impact of these eleventh-hour interrogatory responses on Marsh's defense of the case, the Court should consider ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████ But Harvard's belated disclosure of these purported damages made that impossible and forced Marsh to participate in expensive, time-consuming discovery that may have been entirely unnecessary.

Dated: February 13, 2026

Respectfully submitted,

MARSH USA INC. (n/k/a MARSH USA LLC)

By its attorneys,

*/s/ Denise M. Paarlberg*

_____
Jonathan I. Handler, BBO #561475
Denise M. Paarlberg, BBO #713970
Victoria R. Whalen, BBO #712540
DAY PITNEY LLP
One Federal Street
Boston, MA 02110
(617) 345-4600
(617) 345-4776
jhandler@daypitney.com
dpaarlberg@daypitney.com
twhalen@daypitney.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2026, a true and correct copy of the foregoing was served via electronic mail upon the attorneys of record in this matter.

*/s/ Denise M. Paarlberg*
Denise M. Paarlberg

124450001.13